374 F.3d 46
 Ramon Antonio MARRERO PICHARDO, Plaintiff-Appellant,
v.
John ASHCROFT, U.S. Attorney General, Immigration and Naturalization Service, Commissioner of Immigration and Naturalization, INS District Director for New York City, Defendants-Appellees.
 Docket No. 02-2201.
 United States Court of Appeals, Second Circuit.
 Argued: October 15, 2003.
 Decided: July 1, 2004.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Michael G. Moore,[1] Springfield, MA, (Ishmael Gonzales, New York, NY, on the brief) for Plaintiff-Appellant.
 Steven J. Kim, Assistant United States Attorney for the Eastern District of New York (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Varuni Nelson, Assistant United States Attorney for the Eastern District of New York, on the brief), Brooklyn, NY, for Defendants-Appellees.
 Before: OAKES, NEWMAN, and POOLER, Circuit Judges.
 POOLER, Circuit Judge.
 
 
 1
 Ramon Antonio Marrero Pichardo, a native and citizen of the Dominican Republic, was admitted to the United States as a lawful permanent resident on March 5, 1975. Pichardo's wife and 22 year-old daughter both reside in Brooklyn, New York. His sister and brother-in-law also live in the United States, and Pichardo claims to have no ties to the Dominican Republic. Between October 26, 1975 and September 21, 1999, he was convicted eleven times in New York state courts for driving while under the influence of alcohol ("DUI"), receiving sentences which included fines, probation, and terms of imprisonment ranging from one to three years.
 
 
 2
 Based on Pichardo's November 25, 1992 and September 21, 1999 DUI convictions, in violation of New York Vehicle and Traffic Law ("NYVTL") § 1192, the Immigration and Naturalization Services ("INS") instituted proceedings to deport Pichardo as a person who had committed an "aggravated felony" pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). On August 28, 2000, United States Immigration Judge Joe Miller ("IJ") found Pichardo removable for having been convicted of an aggravated felony, and ordered his removal to the Dominican Republic. Pichardo, appearing pro se, did not appeal the decision to the Board of Immigration Appeals ("BIA").
 
 
 3
 On July 20, 2001, the Second Circuit held that "a felony DUI conviction under NYVTL § 1192.3 does not amount to a `crime of violence' under 18 U.S.C. § 16(b) for purposes of defining an `aggravated felony[.]'" Dalton v. Ashcroft, 257 F.3d 200, 208 (2d Cir.2001) ("Dalton").[2] This court reversed the BIA decision rejecting a claim that a New York state DUI conviction, pursuant to NYVTL § 1192, was a "crime of violence." Id. at 203. The BIA's decision was issued on May 17, 2000, approximately three months prior to the entry of Pichardo's deportation order. Id.
 
 
 4
 On October 12, 2001, Pichardo, now represented by counsel, filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York by order to show cause. Remarkably, the petition did not cite Dalton. Instead, it raised two specious arguments. Pichardo's first argument wrongly asserted that he was subject to an order of deportation because of weapons and controlled substance convictions, not his DUI convictions. His second argument was that his post-deportation order detention was unlawful because it exceeded the 90-day "removal period" required by 8 U.S.C. § 1231(a)(1)(B). On December 10, 2001, the government by letter urged the district court to reject Pichardo's petition.
 
 
 5
 On December 13, 2001, the district court conducted a hearing on Pichardo's habeas petition. At that time, Pichardo's counsel conceded that he had misconstrued the underlying facts and did not realize that Pichardo was being deported based solely on the DUI convictions. The district court gave Pichardo until December 28, 2001 to amend his petition.
 
 
 6
 On January 17, 2002, the government informed the district court by letter that Pichardo's attorney had not filed an amended petition and requested the petition be dismissed. On January 18, 2002, the district court dismissed the petition and dissolved the outstanding stay of deportation. In February 2002, Pichardo was deported to the Dominican Republic.
 
 
 7
 On March 15, 2002, Pichardo filed a notice of appeal from the district court's dismissal of his habeas petition. On March 25, 2002, Pichardo also filed a motion to reconsider in the district court which, for the first time, argued that Dalton nullified his order of deportation. The government argued that the motion should be denied as untimely because he did not previously raise this argument before the district court. On September 13, 2002, the district court denied his motion to reconsider on both grounds. On appeal, Pichardo argues that the district court erred in denying his motion to reconsider, that procedural defects with his claims should be excused, and that his order of deportation should be vacated. We agree.
 
 
 DISCUSSION
 
 
 8
 This Court "review[s] a district court's denial of habeas relief de novo, but we review its findings of fact only for clear error." Tueros v. Greiner, 343 F.3d 587, 590 (2d Cir.2003) (citations omitted). Further, "we review the question of whether the district court had subject matter jurisdiction in this case de novo." Theodoropoulos v. INS, 358 F.3d 162, 167 (2d Cir.2004) ("Theodoropoulos II"), petition for cert. filed (April 12, 2004) (No. 03-9866).
 
 
 9
 As a preliminary matter, we briefly note that, contrary to the government's contention on appeal, Pichardo's appeal is not moot. A case becomes moot when it no longer satisfies the "case-or-controversy" requirement of Article III, Section 2 of the Constitution. See Spencer v. Kemna, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). In order to satisfy this requirement, the petitioner must, at all stages of the litigation, have suffered, or be threatened with, an actual injury which is likely to be redressed by a favorable judicial decision. See id. The government claims that even if Pichardo's DUI convictions are no longer a valid basis for deportation, his other criminal convictions involving narcotics and weapons possession render him permanently inadmissible pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II). Thus, the government argues, Pichardo's case is moot because even if he were to prevail on appeal, he would still be removed for a wholly separate and independent reason. However, the government has been unable to furnish any tangible or reliable evidence establishing that these other convictions exist.[3] Indeed, according to the government's correspondence of December 12, 2003, there is no record of these other convictions. Ltr. from Asst. U.S. Atty. Kim to the Court, 12/12/03, at 1. A recent printout of Pichardo's criminal record from the National Crime Information Center does not list these convictions, and the government is "not aware of any other source for information about these convictions...." Id. We also note that Pichardo's deportation to the Dominican Republic in February 2002 does not moot his appeal. See Swaby v. Ashcroft, 357 F.3d 156, 159-60 (2d Cir.2004). Accordingly, the government's claim that Pichardo's appeal is moot is dismissed.
 
 
 10
 There remain, however, three significant procedural bars to Pichardo's appeal: (1) Pichardo failed to appeal his deportation order to the BIA before he filed his habeas petition; (2) he did not submit his Dalton claim to the district court until he filed his motion for reconsideration, two months after the district court denied his habeas petition; and (3) his notice of appeal is technically defective. In order to avoid manifest injustice, we excuse these procedural defects to reach the substance of Pichardo's claim. Further, the district court erred in dismissing Pichardo's motion for reconsideration in light of Dalton. Thus, we vacate the district court's order denying Pichardo's motion for reconsideration, and remand to the district court with directions to grant Pichardo's habeas petition and to vacate the order of removal.
 
 I. ADMINISTRATIVE EXHAUSTION REQUIREMENT
 
 11
 It is undisputed that Pichardo never appealed the IJ's deportation order to the BIA. Generally, the exhaustion doctrine requires a party to pursue all possible administrative relief within the deciding agency before seeking federal judicial review of an unfavorable decision. "This Court considers an alien's waiver of the right to appeal to the BIA as a failure to exhaust administrative remedies for jurisdictional purposes." Beharry v. Ashcroft, 329 F.3d 51, 56 (2d Cir.2003). The requirement of administrative exhaustion can be either statutorily or judicially imposed. "The distinction between the two exhaustion requirements can be `pivotal,' because statutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions." Id. at 56-57 (internal citations omitted); see also Booth v. Churner, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (courts "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"); McCarthy v. Madigan, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (judicially imposed exhaustion requirements are prudential and statutory ones are jurisdictional).
 
 
 12
 8 U.S.C. § 1252(d)(1) requires a habeas petitioner to exhaust all available agency remedies before appealing the IJ's decision to federal court.[4] See Theodoropoulos II, 358 F.3d at 169. This provision provides, in pertinent part, that federal courts "may review a final order of removal only if... the alien has exhausted all administrative remedies available to the alien as of right." This Circuit recently held that section 1252(d)(1) is a statutory exhaustion requirement and, accordingly, common law "exceptions — including futility — [are] simply not available [.]" Id. at 172; see also Duvall v. Elwood, 336 F.3d 228, 234 (3d Cir.2003) (holding that section 1252(d) effects a statutory exhaustion requirement, which accordingly precludes any common law exceptions for procedural default); Sundar v. INS, 328 F.3d 1320, 1323, 1325 (11th Cir.) (same), cert. denied, 540 U.S. 1006, 124 S.Ct. 531, 157 L.Ed.2d 412 (2003). Nonetheless, the court in Theodoropoulos II also recognized an exceedingly narrow exception. It stated that although "as a general rule, courts are required to strictly enforce statutory exhaustion requirements[,]" there are "some limited circumstances in which an exception to the general rule might apply." 358 F.3d at 172-73. We invoke the narrow leeway afforded by Theodoropoulos II and hold that in light of the unusual facts of Pichardo's case, an exception is necessary to prevent manifest injustice.
 
 
 13
 Courts have historically interpreted procedural rules to prevent a fundamental miscarriage of justice. See, e.g., Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (holding that in the case of state procedural default, a "federal habeas review of the claims is barred unless the prisoner can demonstrate [among other things] that failure to consider the claims will result in a fundamental miscarriage of justice"); McCleskey v. Zant, 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) ("Federal courts retain the authority to issue the writ [in cases of fundamental miscarriage of justice]"); Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (observing that "where a constitutional violation has probably resulted in the conviction of one who is actually innocent ... a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default"); Mathews v. Eldridge, 424 U.S. 319, 330, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (finding that even though petitioner did not fully exhaust administrative review procedures, courts could nonetheless entertain claimant's constitutional claims).
 
 
 14
 Prior to Theodoropoulos II, courts of this Circuit have on numerous occasions acknowledged that it could excuse a habeas petitioner's procedural default in an immigration proceeding under extreme circumstances. See, e.g., Dixon v. Miller, 293 F.3d 74, 80-81 (2d Cir.) (even if habeas petitioner procedurally defaulted on his claims, there is a limited exception to avoid "a fundamental miscarriage of justice") (quoting Coleman, 501 U.S. at 750, 111 S.Ct. 2546), cert. denied, 537 U.S. 955, 123 S.Ct. 426, 154 L.Ed.2d 305 (2002); Theodoropoulos v. INS, 313 F.3d 732, 737 (2d Cir.2002) ("A petitioner may avoid even statutorily established administrative exhaustion requirements when ... [the petitioner raises] a substantial constitutional question.").
 
 
 15
 The First and Seventh Circuits have both suggested that, although section 1252(d)(1) effects a statutory exhaustion requirement, failure to exhaust may be excused if the petitioner raises a "substantial constitutional claim" or where a "miscarriage of justice" may occur. Singh v. Reno, 182 F.3d 504, 510-11 (7th Cir.1999) (finding that a narrow exception existed to correct "bizarre miscarriages of justice"); Sousa v. INS, 226 F.3d 28, 32 (1st Cir.2000) (reviewing court could consider "extreme cases" involving "a miscarriage of justice" notwithstanding procedural default).
 
 
 16
 Indeed, one Fifth Circuit case has suggested that, notwithstanding the fact that section 1252 mandates exhaustion, a common law futility exception may still be available. Goonsuwan v. Ashcroft, 252 F.3d 383, 389 (5th Cir.2001) (habeas petitioner's failure to exhaust may be excused where "resort to the [BIA] would be futile because the challenge is one that the agency has no power to resolve in the applicant's favor") (quotation marks omitted). The First Circuit also appears to endorse this approach. Sousa, 226 F.3d at 32 (noting in dicta that the exhaustion requirement may be excused "where a resort to the agency would be futile because the challenge is one that the agency has no power to resolve in the applicant's favor").
 
 
 17
 Animated by this line of authority, we find it appropriate to employ the narrow exception provided for by Theodoropoulos II. We therefore hold that, notwithstanding a habeas petitioner's failure to exhaust his claims before the BIA, as required by section 1252(d), we nonetheless have jurisdiction to consider the petitioner's claim if it is necessary to avoid manifest injustice.
 
 
 18
 Our inquiry then turns to whether Pichardo's case poses such dire consequences. We find that it does. As a preliminary matter, Pichardo resided in the United States for over twenty-six years with his wife and daughter, and his extended family. He claims to have no ties with the Dominican Republic. Moreover, at the time of Pichardo's removal proceedings based on his New York DUI convictions, he proceeded pro se. At that time, BIA precedent clearly provided that a DUI conviction was a "crime of violence." See In re Puente-Salazar, Int. Dec. No. 3412, 1999 WL 770709 (BIA Sept. 29, 1999) (Texas); In re Magallanes-Garcia, Int. Dec. No. 3341, 1998 WL 133301 (BIA Mar. 19, 1998) (Arizona). Indeed, only three months prior to the entry of Pichardo's deportation order, the BIA, construing the same New York DUI statute, held that such a crime constituted a crime of violence, see Dalton, 257 F.3d at 203, and this Court had not yet reviewed the BIA's decision in Dalton.
 
 
 19
 It is also significant that Pichardo's claim refers not to a collateral matter, but to one going to the very basis of his deportation. Moreover, his claim is virtually certain to succeed if considered on appeal. Finally, we find it notable that the government failed to raise the issue of administrative exhaustion below, and raises this defense for the first time on appeal. Curiously, in its opposition to Pichardo's motion for reconsideration, in which Pichardo first raised his Dalton claim, the government did not bring up the fact that Pichardo never appealed to the BIA.
 
 
 20
 In light of these compelling circumstances, we hold that manifest injustice will occur if we fail to consider Pichardo's claims based on his failure to exhaust. Accordingly, we hold that it is appropriate for this court to exercise jurisdiction over Pichardo's claims on appeal.
 
 
 21
 II. FAILURE TO RAISE THIS CLAIM BEFORE THE DISTRICT COURT
 
 
 22
 The fact that Pichardo did not raise his Dalton claim before the district court until his motion for reconsideration does not defeat his claim on appeal. Although generally this Court "will not consider an argument on appeal that was raised for the first time below in a motion for reconsideration[,][t]his `waiver' rule is one of prudence ... and [is] not jurisdictional." Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 159 (2d Cir.2003). This Court retains "broad discretion to consider issues not timely raised below." Id. (citations and quotations omitted). This is especially the case "where the issues not addressed below involved purely legal questions." J.C. v. Regional School Dist. 10, Bd. of Educ., 278 F.3d 119, 125 (2d Cir.2002). Here, it is a pure question of law whether Pichardo's DUI convictions can be a ground for deportation following this court's holding in Dalton. There are no facts in dispute regarding this issue, and the record on appeal adequately supports our conclusions. Accordingly, we choose to exercise our discretion to consider legal claims raised for the first time in Pichardo's motion for reconsideration.
 
 III. DEFECTIVE NOTICE OF APPEAL
 
 23
 The fact that Pichardo's notice of appeal is defective also does not defeat his appeal. Although this appeal is premised on claims raised in his Motion for Reconsideration, his notice of appeal applied only to the district court's denial of his habeas petition, and not to the district court's ruling on his subsequent motion. Nonetheless, this Court has previously excused defects in an appellant's notice of appeal by holding that the notice requirement should be liberally construed. See Conway v. Village of Mount Kisco, N.Y., 750 F.2d 205, 211 (2d Cir.1984); see also Phelps v. Kapnolas, 123 F.3d 91, 93 (2d Cir.1997). In determining whether to permit a defective notice of appeal, this court considers the "notice of appeal so as to remain faithful to the intent of the appellant, fair to the appellee, and consistent with the jurisdictional authority of this court." Id. Here, Pichardo's intent to appeal his Dalton claim is clear, and the government does not argue that it was prejudiced or surprised by any defects in Pichardo's notice of appeal. Further, even though Pichardo was represented by counsel before the district court, his attorney's performance before the district court was abysmal. In failing to discover Dalton, the attorney forfeited the strongest and most obvious challenge to Pichardo's deportation. Instead, the attorney mistakenly assumed that Pichardo was deported based on alleged convictions involving weapons and narcotics. This mistake is incredible in light of the fact that the Notice to Appear issued by the INS plainly states that Pichardo was being deported for his two DUI convictions. Moreover, as acknowledged by the government, there is no record evidence showing that these other convictions exist. Finally, on December 13, 2001, at oral argument before the district court, Pichardo's attorney conceded that he misunderstood the grounds for removal and agreed to amend the petition by December 28, 2001. By letter dated January 17, 2002, the government notified the district court that Pichardo's attorney had neither filed nor served any amended petition. The district court then dismissed Pichardo's petition one day later based on his attorney's error.
 
 
 24
 In sum, although Pichardo's deportation would not be ordered today in light of a change in the governing law, it appears that he was unable to take advantage of this change simply due to poor lawyering. Accordingly, we choose to exercise our discretion in permitting Pichardo's appeal to proceed.
 
 
 25
 IV. SUBSTANCE OF PICHARDO'S MOTION TO RECONSIDER
 
 
 26
 This Court reviews an appeal from the denial of a motion for reconsideration for an abuse of discretion. See Harris v. Kuhlmann, 346 F.3d 330, 357 (2d Cir.2003). "A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." United States v. International Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir.2001). "The burden of proof is on the party seeking relief from judgment[.]" Id. Rule 60(b) provides, in pertinent part:
 
 
 27
 On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ...; (3) fraud ..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, ... or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.
 
 
 28
 Subpart (6) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice [and] it constitutes a grand reservoir of equitable power to do justice in a particular case." Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir.1986), cert. denied, 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987) (citations and quotation marks omitted). Furthermore, " it is properly invoked where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship [.]" Id.; see also Virgin Atl. Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir.1992) (courts may reconsider an earlier opinion if there has been an "intervening change of controlling law ... new evidence [has become available], or [there is a] need to correct a clear error or prevent manifest injustice") (citation and quotation marks omitted).
 
 
 29
 We note that, as a general matter, a mere change in decisional law does not constitute an "extraordinary circumstance" for the purposes of Rule 60(b)(6). See Travelers Indem. Co. v. Sarkisian, 794 F.2d 754, 757 (2d Cir.) (denying Rule 60(b)(6) relief where Supreme Court reversed ruling on claims for indemnity under RICO statute after entry of final judgment), cert. denied, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986). However, for all of the reasons discussed above, this case is different. Absent a meaningful and substantive review of Pichardo's case, manifest injustice will occur because the change in law goes to the very basis of Pichardo's deportation. Pichardo's order of deportation is undermined in light of dramatic changes to governing law, a fact that existed at the time his habeas petition was pending before the district court. It is inexplicable that neither party came upon this significant fact. The district court's failure to reconsider Pichardo's order of deportation once it was made aware of such an important fact, which in large part was due to incompetent lawyering, amounts to an abuse of discretion. Accordingly, we hold that "extraordinary circumstances" exists to warrant reconsideration of the district court's judgment.
 
 CONCLUSION
 
 30
 For the reasons stated above, we VACATE the district court's order denying Pichardo's motion for reconsideration and REMAND to the district court with directions to grant the petition for habeas corpus and to vacate Pichardo's order of removal.
 
 
 
 Notes:
 
 
 [1]
 Michael Moore has been suspended from practicing before this Court. Pichardo is now represented by attorney Roberto T. Lucheme, who is located in Gladstonbury, Connecticut
 
 
 [2]
 We note that the Supreme Court has recently granted certiorari in the Eleventh Circuit's decision inLeocal v. Ashcroft, 540 U.S. 1176, 124 S.Ct. 1405, 158 L.Ed.2d 76 (2004). Leocal involves whether a conviction under a Florida statute that provides penalties for driving while intoxicated and causing serious bodily injury is a "crime of violence" within the meaning of 18 U.S.C. § 16(a), which renders an alien removable for having been convicted for an "aggravated felony". See Leocal v. United States Attorney General, No. 02-14992, slip op. (11th Cir. June 30, 2003) (per curiam). Pichardo's case is distinguishable from Leocal because Pichardo's DUI convictions did not involve bodily injury.
 
 
 [3]
 We note that, by statute, "any alien convicted of,or who admits having committed" certain narcotics offenses are inadmissible pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II) (emphasis added). The government argues that, although there is no evidence that Pichardo has ever been convicted of any narcotics or weapons convictions, he has previously admitted to having these convictions and these admissions, irrespective of their inaccuracy, alone render him inadmissible. Ltr. from Asst. U.S. Atty. Kim to the Court, 04/29/04, at 2. Without commenting on the merits of this position, we note only that the government failed to submit any evidence that Pichardo conceded that he committed a narcotics offense that would render him inadmissible or deportable. Although Pichardo's petition for a writ of habeas corpus was based on the erroneous belief that his order of deportation was based on narcotics and weapons convictions, his attorney later corrected this mistake. At oral argument before the district court, Pichardo's attorney stated:
 We would respectfully request an adjournment in order for me to amend my memorandum of law. There are no narcotics nor weapons convictions in this case, your Honor. The only reason why the INS sought to deport my client was because of a DWI.
 Record at 88 (emphasis added). The district court accepted this recantation without the government's objection.
 
 
 [4]
 Theodoropoulos II explicitly rejected the alternative reading of section 1252(d) previously alluded to by Beharry v. Ashcroft, 329 F.3d 51, 56 (2d Cir.2003). Beharry intimated that, based on the Supreme Court's reasoning in INS v. St. Cyr, 533 U.S. 289, 295-96, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), section 1252(d) did not apply to habeas proceedings because the statute did not clearly provide whether the term "review" included habeas corpus review. Id. Theodoropoulos II repudiated this position by reasoning that section 1252(d), unlike the statute at issue in St. Cyr, does not "raise a significant constitutional question because [this] section does not purport to strip courts of jurisdiction altogether; it simply imposes an exhaustion requirement on such jurisdiction." Theodoropoulos II, 358 F.3d at 170.