Marvin O. CAESAR, Petitioner,

v.

John ASHCROFT, U.S. Atty. Gen., and U.S. Immigration and Customs Enforcement (ICE),[1] Respondents.

No. 04 Civ. 8195(LBS).

United States District Court, S.D. New York.

Jan. 3, 2005.

---

1. In the original caption, U.S. Immigration and Customs Enforcement is incorrectly listed as the "Board of Immigration and Customs Enforcement."

Marvin O. Caesar, York, PA, Petitioner pro se.

David N. Kelley, United States Attorney for the Southern District of New York (Sue Chen, Special Assistant United States Attorney, of counsel), New York City, for Respondents.

## OPINION

SAND, District Judge.

Petitioner Marvin Caesar ("Petitioner") filed this *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2241, seeking relief from a final order of deportation. He asks that this Court "in its discretion and jurisdiction grant[ ] petitioner relief from deportation under [section] 212(c) of the [Immigration and Nationality] Act" (Petition ["Pet."] at 4 ¶ 2); that this Court "rule[ ] that petitioner's crimes of criminal possession of stolen property in the 3rd degree and unauthorize[d] use of a motor vehicle are not deportable [a]cts or crimes of Moral Turpitude" (Pet. at 4 ¶ 3); and that this Court "restore petitioner's bond pending his Appeal, and if this court deems it necessary release petitioner on a lower bond that that originally set by the [Immigration and Naturalization] Service" (Pet. at 4 ¶ 4). For the reasons set forth below, the petition is dismissed.

## I. Background

Petitioner is a native and citizen of Guyana who entered the United States on April 22, 1987 as a Lawful Permanent Resident. His parents, his five brothers and his wife are all either Lawful Permanent Residents or United States citizens, and he has four children, all of whom are United States citizens.

Beginning in 1990, Petitioner accumulated a rather lengthy list of criminal convictions in New York State courts. In July of 1990 and July of 1991, Petitioner twice pled guilty to unauthorized use of a vehicle without the consent of the owner, in violation of New York Penal Law ["P.L."] § 165.05(1), and received conditional discharges. In October of 1991, he pled guilty to criminal possession of stolen property in the third degree, in violation of P.L. § 165.50; in August of 1992 he was sentenced on that charge to eight months imprisonment, and also pled guilty to attempted unauthorized use of a vehicle in the third degree, in violation of P.L. §§ 110 and 165.05, and was sentenced to twenty days imprisonment. In December of 1993 he pled guilty to attempted petit larceny, in violation of P.L. §§ 110 and 155.25, and was sentenced to sixty days imprisonment. Also in December of 1993, he again pled guilty to unauthorized use of a vehicle without the consent of the owner, in violation of P.L. § 165.05(1), and was sentenced to seven months imprisonment.

In April of 1994, Petitioner was served with an Order to Show Cause charging that he was deportable under section 241(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA"). That section, then as now, declared an alien to be deportable if, "at any time after admission," the alien was "convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct." 8 U.S.C.S. § 1227(a)(2)(A)(ii) (2004). The two convictions charged were Petitioner's October 1991 conviction for criminal possession of stolen property in the third degree, and his December 1993 conviction for attempted petit larceny.

Following service of the Order to Show Cause, Petitioner was convicted of several more violations of New York State law. In June of 1994, he pled guilty to aggra-

vated unlicensed operation of a motor vehicle in the second degree, in violation of New York Vehicle and Traffic Law § 511, and was fined $500. In September of 1995, he pled guilty to attempted grand larceny in the fourth degree, in violation of P.L. §§ 110 and 155.30; he initially received a conditional discharge accompanied by ten days of community service, but was resentenced to 30 days imprisonment in June of 1998 after violating the terms of his conditional discharge. In July 1998, he pleaded guilty to forgery in the third degree, in violation of P.L. § 170.05, and resisting arrest, in violation of P.L. § 205.30, and in May of 1999 he was sentenced on those offenses to time served. In April of 2003, he was convicted of disorderly conduct, in violation of P.L. § 240.20, and was given a conditional discharge and sentenced to 3 days of community service.

In December of 1994, meanwhile, Petitioner, then represented by counsel, had filed a request for relief from deportation under § 212(c) of the INA. That section provided that "aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to [various grounds for exclusion]," so long as the aliens in question had not "been convicted of one or more aggravated felonies and ... served for such felony or felonies a term of imprisonment of at least 5 years." 8 U.S.C.S. § 1182(c) (1994) (repealed 1996). Although § 212(c) by its terms only refers to relief from *exclusion* from the United States, it had been held long before 1994 to be applicable to relief from deportation as well. *See Francis v. INS*, 532 F.2d 268 (2d Cir.1976); *Matter of Silva*, 1976 WL 32326, 1976 BIA LEXIS 66, 16 I. & N. Dec. 26 (BIA 1976).

At some time between February and September of 1995—the precise date is not clear from the record—Petitioner's request for § 212(c) relief was denied by an Immigration Judge ("IJ"), who concluded that Petitioner had not demonstrated that he was deserving of a favorable exercise of discretion. Petitioner, still represented by counsel, appealed to the Board of Immigration Appeals ("BIA"), which in March 1997 held him to be ineligible, under § 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, even to be considered for § 212(c) relief. Following various procedural complications not relevant here, Petitioner in January 1999 filed a *pro se* habeas corpus action in this District, pursuant to 28 U.S.C. § 2241, challenging the BIA's ruling. *Caesar v. McElroy*, 99 Civ. 0945(RMB) (S.D.N.Y.).

The 1999 habeas action was resolved in July 1999, on consent of the parties, by a stipulation vacating the final order of deportation issued by the BIA and remanding for further proceedings in accordance with *Henderson v. INS*, 157 F.3d 106 (2d Cir.1998), which had held that "[AEDPA] § 440(d) does not apply to cases initiated before the date of its enactment." 157 F.3d at 129. In October 1999, the BIA in turn remanded Petitioner's case to the IJ so that the record could be updated. Petitioner was again represented by counsel before the IJ. The IJ, in an April 2003 decision, again found Petitioner to be deportable, and determined that he did not warrant a favorable exercise of discretion under § 212(c). Though the IJ found that Petitioner had established "outstanding equities" in that most or all of his family members were in the United States and his deportation would cause them and him emotional and possibly financial hardship, she determined that Petitioner's continued criminal record, accompanied by his failure to file tax returns for various years and his

default on certain student loans, showed insufficient rehabilitation to warrant § 212(c) relief. *Matter of Caessar* [sic], File No. A–41–330–826 (U.S. Immigration Court April 7, 2003), at 10 (Respondents' Return ["Ret."] at A13–A25, A22).

On May 4, 2004, Petitioner was taken into custody by U.S. Immigration and Customs Enforcement ("ICE"),[2] and detained at York County Prison in York, Pennsylvania. Petitioner requested review by an IJ of the decision to detain him, and on May 14, 2004, an IJ ordered him released on $17,500 bond. Petitioner alleges that he was unable to post this bond (Pet. at 4 ¶ 18).

On August 5, 2004, following an appeal on which Petitioner was represented by counsel, the BIA adopted and affirmed the IJ's decision, agreeing that Petitioner had "presented outstanding equities" but also agreeing that those equities were insufficient to justify § 212(c) relief in light of "[Petitioner's] continuing encounters with the criminal justice system, not only after being placed in deportation proceedings, but even after the Immigration Judge's 1995 decision put him even more clearly on notice of the significance of demonstrating genuine efforts at rehabilitation." *In re Caesar*, File A41–330–826 (B.I.A. Aug. 5, 2004), at I (Ret. at A1). The order of deportation thus having become final, Petitioner's bond was withdrawn. (Pet. at 4 ¶ 18; Respondents' Memorandum in Opposition to Petition for Writ of Habeas Corpus ["Resp. Mem."] at 17.)

On October 14, 2004, Petitioner filed the instant *pro se* petition. The government, on October 19, 2004, consented to a stay of Petitioner's deportation until January 10, 2005.

## II. Discussion

Before reaching the merits of Petitioner's claims, it is necessary to determine whether this Court has jurisdiction to address them. Respondents assert that the Court does not, for three distinct reasons: lack of personal jurisdiction over a proper respondent to the petition, lack of subject matter jurisdiction over a discretionary decision made by the immigration authorities, and lack of subject matter jurisdiction due to Petitioner's failure to properly exhaust one of his claims. "Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter," before addressing questions of personal jurisdiction. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). The Court will follow that custom here.

### A. Lack of Jurisdiction to Review a Discretionary Decision Under INA § 212(c)

In *Sol v. INS*, the Court of Appeals for the Second Circuit held that "federal jurisdiction over § 2241 petitions does not extend to review of discretionary determinations by the IJ and the BIA." 274 F.3d 648, 651 (2d Cir.2001). Though "statutory or constitutional errors" may be reviewed on habeas corpus, the Court of Appeals ruled in *Sol*, claims that the IJ or BIA improperly exercised their discretion, and that their ultimate decision thus "lacked adequate support in the record," may not be. *Id.* Therefore, the Court of Appeals held, the District Court had been correct

---

**2.** On March 3, 2003, the former Immigration and Naturalization Service (INS) was replaced by U.S. Immigration and Customs Enforcement (also known as the Bureau of Immigration and Customs Enforcement) and U.S. Citizenship and Immigration Services (also known as the Bureau of Citizenship and Immigration Services), both part of the new Department of Homeland Security. *See United States v. Nuzzo,* 385 F.3d 109, 111 n. 1 (2d Cir.2004); *Brown v. Ashcroft,* 360 F.3d 346, 348 n. 1 (2d Cir.2004); Ret. at 1 n. 1.

to find that it lacked subject matter jurisdiction over Sol's claim that "the BIA had abused its discretion in denying him a waiver of deportation" under INA § 212(c). *Id.* at 650–51.

■ Petitioner, like the appellant in *Sol*, seeks a discretionary waiver of deportation pursuant to former section 212(c) of the INA. To quote from the petition, he "prays this court in its discretion and jurisdiction grants petitioner relief from deportation under 212(c) of the [Immigration and Nationality] Act." (Pet. at 4 ¶ 2.) Under the rule of *Sol*, this Court has no such discretion and jurisdiction in connection with a habeas petition brought under 28 U.S.C. § 2241. While a habeas court may determine whether an alien is eligible to be considered for § 212(c) relief at all, *see INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), it may not second-guess the discretionary decision of the IJ and BIA, made after such consideration, regarding whether § 212(c) relief should actually be granted. The IJ considered the equities in Petitioner's favor, but determined that he had shown insufficient rehabilitation to warrant § 212(c) relief; the BIA affirmed for substantially the same reason. Since the decision by the IJ and the BIA not to grant Petitioner relief under § 212(c) was a discretionary decision on the merits of Petitioner's application, this Court has no power to alter it.

It is true that "[a] prohibition against the review of a discretionary decision need not extend to non-discretionary decisions upon which the discretionary decision is predicated." *Billeke–Tolosa v. Ashcroft*, 385 F.3d 708, 711 (9th Cir.2004). Had the decision by the IJ and BIA to deny Petitioner § 212(c) relief, though purportedly an exercise of discretion, been predicated upon a misinterpretation of statutory law, *see Sol*, 274 F.3d at 651 (noting that Sol "d[id] not raise a statutory . . . claim"), or upon disregard of the BIA's own prece-

dents, *see Billeke–Tolosa*, 385 F.3d at 712 (holding that "the BIA had no discretion to ignore its own precedent"), it is possible that this Court might have habeas jurisdiction to review that decision. It does not appear to the Court, however, that the decision to deny Petitioner relief was based on such an underlying error. The text of § 212(c) provides only the possibility of relief "in the discretion of the Attorney General," 8 U.S.C.S. § 1182(c) (1994) (repealed 1996), and IJs and the BIA are "[t]he Attorney General's delegates," *St. Cyr v. INS*, 229 F.3d 406, 410 n. 2 (2d Cir.2000), *aff'd*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), so the actions of the IJ and BIA in denying relief as a matter of discretion were consistent with statutory law. The reasoning by which the IJ and BIA denied Petitioner § 212(c) relief was consistent with BIA precedent, as well: under *Matter of Buscemi*, 1988 WL 235453, 1988 BIA LEXIS 18, 19 I & N Dec. 628, 634 (B.I.A.1988), even "an alien who demonstrates unusual or outstanding equities" may be denied § 212(c) relief as a matter of discretion, and according to *Matter of Roberts*, 1991 WL 353515, 1991 BIA LEXIS 9, 20 I. & N. Dec. 294, 299 (BIA 1991), rehabilitation or lack thereof—on which the IJ and BIA focused—is a "significant discretionary factor." Thus, the discretionary decision to deny Petitioner § 212(c) relief was not based on a legal error in any way that might conceivably render it subject to habeas review under 28 U.S.C. § 2241 consistently with *Sol*.

■ Petitioner has identified several additional purported sources of jurisdiction besides 28 U.S.C. § 2241, but none of them would authorize this Court to review a discretionary refusal to grant a § 212(c) waiver. Petitioner cites the common law, the Suspension Clause of the United States Constitution, the Due Process Clause of the Fifth Amendment, the Unit-

ed States Constitution as a whole, mandamus jurisdiction under 28 U.S.C. § 1361, the Administrative Procedures Act, the Declaratory Judgment Act, 28 U.S.C. § 1651 (the All Writs Act), and the INA (also referred to as "[8] U.S.C. section 1101 et seq."). (Pet. at 1; Petitioner's Response to Respondent's Opposition to Petition for Writ of Habeas Corpus ["Pet. Resp."] at 3.) Under the applicable transitional provision of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"),[3] however, "there shall be no appeal of any discretionary decision under section 212(c), 212(h), 212(i), 244, or 245 of the Immigration and Nationality Act (as in effect as of the date of the enactment of [IIRIRA])." Pub.L. No. 104–208, § 309(c)(4)(E), 110 Stat. 3009, 3009–626 (1996), codified at 8 U.S.C.S.

§ 1101 note (2004) (Effective Dates). Although the logic of the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289, 297–314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), suggests that such a general prohibition does not apply to a petition for habeas corpus, *see Atkinson v. INS*, 01 Civ. 3432(MBM), 2001 WL 1223481, at *3, 2001 U.S. Dist. LEXIS 16428 (S.D.N.Y. Oct. 15, 2001), at *12–13, the appeal prohibition in IIRIRA § 309(c)(4)(E) still bars the exercise of any other sort of non-habeas jurisdiction to review a discretionary decision by the IJ and BIA denying § 212(c) relief.[4] *See Mattis v. Ashcroft*, 04 Civ. 2333(DC), 2004 WL 2471314, at *3, 2004 U.S. Dist. LEXIS 22387, at *11 (S.D.N.Y. Nov. 3, 2004) (citing IIRIRA § 309(c)(4)(E) as precluding district court's review of BIA decision not to grant

---

**3.** The transitional provision applies to Petitioner because his is a case "where the INS began removal proceedings prior to April 1, 1997, and a resulting deportation order became final after October 30, 1996." *Sol*, 274 F.3d at 650.

**4.** The exercise of non-habeas jurisdiction over Petitioner's claim for § 212(c) relief may also be precluded by IIRIRA § 309(c)(4)(G), which declares in relevant part that in cases covered by IIRIRA's transitional provisions, "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed ... any offense covered by [INA] section 241(a)(2)(A)(ii) ... for which both predicate offenses are, without regard to their date of commission, otherwise covered by [INA] section 241(a)(2)(A)(i)." 110 Stat. at 3009–626. Petitioner may be such an alien, because of his convictions for criminal possession of stolen property in the third degree and attempted grand larceny in the fourth degree: both are almost certainly crimes involving moral turpitude, so that if their dates of commission were ignored both would satisfy INA § 241(a)(2)(A)(i)(I), 8 U.S.C.S. § 1227(a)(2)(A)(i)(I) (2004), and both are "crime[s] for which a sentence of one year or longer may be imposed," satisfying INA § 241(a)(2)(A)(i)(II), 8 U.S.C.S. § 1227(a)(2)(A)(i)(II) (2004), since the former

is a class D felony, *N.Y. Penal Law* § 165.50 (McKinney 2004), punishable by imprisonment for up to seven years, *N.Y. Penal Law* § 70.00(2)(d) (McKinney 2004), and the latter is a class A misdemeanor, *see N.Y. Penal Law* §§ 110.05(7), 155.30 (McKinney 2004) (grand larceny in the fourth degree is a class E felony, and an attempt to commit a class E felony is a class A misdemeanor), punishable by imprisonment for up to one year, *N.Y. Penal Law* § 70.15(1) (McKinney 2004). Because the appeal prohibition of IIRIRA § 309(c)(4)(G) would be superfluous in this case, the Court need not determine whether § 309(c)(4)(G) applies where its conditions would be met only because of a conviction not cited in the final order of deportation outstanding against the alien in question—here, Petitioner's conviction for attempted grand larceny in the fourth degree. Petitioner's convictions for attempted petit larceny and criminal possession of stolen property in the third degree would not alone be sufficient to satisfy the conditions of § 309(c)(4)(G), since attempted petit larceny is a class B misdemeanor, *see N.Y. Penal Law* §§ 110.05(8), 155.25 (McKinney 2004) (petit larceny is a class A misdemeanor, and an attempt to commit a class A misdemeanor is a class B misdemeanor), not punishable by a sentence in excess of three months of imprisonment, *N.Y. Penal Law* § 70.15(2) (McKinney 2004).

§ 212(c) relief). While the appeal prohibition of IIRIRA § 309(c)(4)(E), like the holding of *Sol,* might not apply if the purportedly discretionary decision had been based on a legal error, *see Billeke–Tolosa,* 385 F.3d at 712; *but see Pilch v. Ashcroft,* 353 F.3d 585, 587 (7th Cir.2003), such is not the case here, as discussed above.

Since § 2241 habeas jurisdiction to review a discretionary denial of § 212(c) relief is precluded by *Sol,* and any other jurisdiction to review a discretionary denial of § 212(c) relief is precluded by IIRIRA § 309(c)(4)(E),[5] this Court has no subject matter jurisdiction over Petitioner's request for § 212(c) relief. Accordingly, the petition must be dismissed for lack of jurisdiction as to that request.

## B. Exhaustion

■ In addition to his prayer that this Court grant him discretionary relief from deportation under § 212(c), Petitioner also requests a ruling "that petitioner's crimes of criminal possession of stolen property in the 3rd degree and unauthorize[d] use of a motor vehicle are not deportable Acts or crimes of Moral Turpitude in the State of New York." (Pet. at 4 ¶ 3.) It is not entirely clear whether Petitioner means to assert that he is being deported for those two crimes and at least one is not a crime of moral turpitude, or whether he recognizes that he is being deported for one of those two crimes (criminal possession of stolen property in the 3rd degree), plus another crime (attempted petit larceny), but wishes to argue that *neither* of the two crimes he mentions is a crime of moral turpitude, and thus that he has not committed the required two crimes of moral turpitude regardless of the status of his conviction for attempted petit larceny. Either argument would raise a pure question of law, of the sort that a court ruling on a § 2241 habeas petition may generally answer. However, this Court lacks subject matter jurisdiction to rule on those arguments because Petitioner did not raise either of them before the IJ and the BIA.

In *Theodoropoulos v. INS,* the Court of Appeals for the Second Circuit held that an alien's "failure to exhaust his administrative remedies deprived the district court of subject matter jurisdiction to entertain his habeas petition." 358 F.3d 162, 168 (2d Cir.2004). According to 8 U.S.C. § 1252(d)(1), "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C.A. § 1252(d)(1) (2004). The Second Circuit in *Theodoropoulos* reasoned that this limitation applies to habeas review, despite the Supreme Court's decision in *St. Cyr* that statutes completely foreclosing judicial "review" do not necessarily apply to habeas, because § 1252(d) is not an

---

5. It is possible that even if non-habeas jurisdiction over Petitioner's claim existed, it could not properly be exercised by this Court, since a petition for habeas corpus may be the only exception to the rule that judicial review of final orders of deportation is generally consigned by current law to the Court of Appeals. *See* IIRIRA § 309(c)(4)(D), 110 Stat. at 3009–626; *INS v. St. Cyr,* 533 U.S. at 313–314, 121 S.Ct. 2271. Because it is apparent that under IIRIRA § 309(c)(4)(E) no court has non-habeas subject matter jurisdiction over Petitioner's appeal of the discretionary denial of his application, this Court need not determine whether it lacks non-habeas subject matter jurisdiction

for an additional reason as well. *See Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 578, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (noting that "there is no unyielding jurisdictional hierarchy"); *Ahmed v. Reno,* Civil Action No. 3–00–CV–1728 (JCH), 2001 WL 50527, 2001 U.S. Dist. LEXIS 523 (D.Conn. Jan. 17, 2001) (dismissing declaratory judgment action seeking review of a determination that alien was inadmissible, because the action impermissibly challenged a discretionary decision by the INS and thus by the Attorney General, without discussing whether such an action could ever be brought).

attempt to "foreclose judicial review of certain INS decisions" in the sense that led the Supreme Court to see a substantial constitutional question in *St. Cyr* and therefore construe the relevant statutes as not applying to habeas petitions. 358 F.3d at 170–71. Rather, "one of the purposes served by the exhaustion requirement contained in § 1252(d) is to ensure that the ... agency responsible for construing and applying the immigration laws and implementing regulations ... has had a full opportunity to consider a petitioner's claims before they are submitted for review by a federal court." 358 F.3d at 171. Thus, in the habeas corpus context as in other contexts, federal courts may not consider claims that the immigration authorities have not had a chance to rule on first.

The details of Petitioner's case differ from those of *Theodoropoulos* in several ways, but none of these differences are sufficient to aid Petitioner. First, since deportation proceedings against Petitioner began before 1996, under the applicable transitional provisions of IIRIRA his case is subject not to 8 U.S.C. § 1252(d)(1) as such, but to the analogous requirement of former INA § 106(c) (formerly codified at 8 U.S.C. § 1105a(c)). *Beharry v. Ashcroft*, 329 F.3d 51, 57 n. 8 (2d Cir.2003). As the Second Circuit recognized in *Beharry*, however, former § 106(c) is "almost identical" to current § 1252(d)(1). *Beharry*, 329 F.3d at 57 n. 9. Former § 106(c) stated that "an order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations." 8 U.S.C.S. § 1105a(c) (1995), *quoted in Beharry*, 329 F.3d at 57. Current § 1252(d)(1) states that "[a] court may review a final order of removal only if ... the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C.A. § 1252(d)(1) (2004). Both provisions require the alien to "exhaust" the "administrative remedies available to [him] as of right" as a necessary condition for a court to "review" an "order"; if anything, the language of former § 106(c) is more emphatic, with its command that in the absence of exhaustion the order "shall not be reviewed by any court." This Court therefore holds that the Second Circuit's interpretation of current § 1252(d)(1) in *Theodoropoulos* applies equally to former § 106(c).

Another difference between this case and *Theodoropoulos* is that Petitioner, unlike Theodoropoulos, did timely seek administrative review of the order of deportation against him, rather than waiving such review entirely. *See Theodoropoulos*, 358 F.3d at 165–66 (noting that Theodoropoulos, when asked by the IJ if he wanted to appeal the IJ's ruling, said that he wanted "to be removed as soon as possible to [his] country"). Even an alien who has continually protested that he is not deportable, however, will fail to exhaust his administrative remedies with respect to a particular claim about the legal status of a crime if he never makes that particular argument before the IJ or BIA. *Foster v. INS*, 376 F.3d 75, 77–78 (2d Cir.2004) (refusing to consider alien's contention that involuntary manslaughter did not qualify as an "aggravated felony", despite "his generalized protestations that his removal was improper," where the alien had never made that specific argument before the IJ or BIA). Petitioner did not argue before the IJ and BIA that the crimes for which the government sought to have him deported were not both crimes of moral turpitude. Thus, despite the differences between petitioner's case and *Theodoropoulos*, he has failed to exhaust his claim that he is not deportable because an insufficient number of his crimes were crimes of moral turpitude.

Yet another distinction between this case and *Theodoropoulos* that is ultimately

unhelpful to Petitioner is that *one* of Petitioner's claims has indeed been exhausted: petitioner did seek relief under § 212(c) before the IJ and BIA, as he does here. The Court is therefore faced with a single habeas petition containing both exhausted and unexhausted claims—a "mixed" petition. Thus, it might at first glance appear appropriate for the Court to consider whether the procedure approved in *Zarvela v. Artuz*, 254 F.3d 374 (2d Cir.2001), for mixed habeas petitions challenging state-court convictions, could be used in the context of a mixed habeas petition challenging an order of deportation. Under *Zarvela*, a court presented with a mixed petition may stay the exhausted claims and dismiss the unexhausted claims. Here, however, the only exhausted claim—for § 212(c) relief—is one over which the Court lacks subject matter jurisdiction for other reasons, as discussed above. Thus, there is no portion of the petition that the Court may legitimately stay rather than dismissing, and any potential *Zarvela* exception to *Theodoropoulos'* s requirement of dismissal does not apply.

The Second Circuit has explicitly recognized a different sort of narrow exception to the *Theodoropoulos* requirement, allowing "jurisdiction to consider the petitioner's claim if it is necessary to avoid manifest injustice." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 53 (2d Cir.2004). This exception does not apply to Petitioner, however. Unlike the unexhausted claim made in *Marrero Pichardo*, which was "virtually certain to succeed if considered on appeal," 374 F.3d at 54, Petitioner's unexhausted claim regarding the status of his crimes appears to have no merit. Petitioner's convictions for criminal possession of stolen property in the third degree and for attempted petty larceny both would qualify as convictions for "crimes of moral turpitude" under governing precedent, rendering him deportable pursuant to INA § 237(a)(2)(A)(ii).

■ In *Michel v. INS*, 206 F.3d 253 (2d Cir.2000), the Second Circuit upheld the BIA's determination that criminal possession of stolen property in the fifth degree, in violation of section 165.40 of the New York Penal Law, was a crime of moral turpitude which warranted deportation (since Michel had been convicted of committing it twice and both acts were not part of a single scheme). "[T]he BIA reasoned that, because section 165.40 specifically requires the violator's knowledge that the property was stolen, Michel's offenses were necessarily crimes involving moral turpitude." 206 F.3d at 263. The Second Circuit "conclude[d] that the BIA's categorical approach to its moral turpitude determination ... was reasonable and based on a permissible construction of § 237(a)(2)(A)(ii) of the INA." 206 F.3d at 265–66. Like the lower degree of criminal possession of stolen property of which Michel was convicted, the higher degree of criminal possession of stolen property of which Petitioner was convicted requires knowledge that the property was stolen:

> A person is guilty of criminal possession of stolen property in the third degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof, and when the value of the property exceeds three thousand dollars.

*N.Y. Penal Law* § 165.50 (McKinney 2004). In fact, the elements of criminal possession of stolen property in the third degree include all of the elements of criminal possession of stolen property in the fifth degree, plus the requirement that the value of the property involved be over three thousand dollars. *See N.Y. Penal Law* §§ 165.40, 165.50 (McKinney 2004). Thus, under *Michel*, Petitioner's conviction for criminal possession of stolen property in the third degree would qualify as a conviction for a crime of moral turpitude.

Petit larceny, too, "historically has been considered a crime involving moral turpitude." *Henry v. Ashcroft*, 175 F.Supp.2d 688, 690 (S.D.N.Y.2001); *accord Brett v. INS*, 386 F.2d 439, 439 (2d Cir. 1967) ("Petitioner's sole claim is that the crime of petit larceny does not involve moral turpitude. This contention is foreclosed by the authority of previous decisions in this and other circuits."), *cited in Henry*, 175 F.Supp.2d at 690. The fact that Petitioner was only convicted of attempted petit larceny, rather than completed petit larceny, does not matter under the logic of *Michel*. Under New York law, in order for a person to be convicted of attempt to commit a crime, it must be proven that "with intent to commit a crime, he engage[d] in conduct which tend[ed] to effect the commission of such crime." *N.Y. Penal Law* § 110.00 (McKinney 2004). To intend to steal property, *see N.Y. Penal Law* § 155.25 (McKinney 2004) ("A person is guilty of petit larceny when he steals property."), requires the same awareness of the larcenous nature of one's acts as actually stealing property. As the Second Circuit stated in an earlier deportation case, "[a]n attempt involves specific intent to do the substantive crime . . . and, if doing the latter discloses moral turpitude, so also does the attempt, for it is in the intent that moral turpitude inheres." *United States ex rel. Meyer v. Day*, 54 F.2d 336, 337 (2d Cir.1931). Thus, attempted petit larceny would qualify as a crime of moral turpitude.

Since petitioner has been convicted of two crimes that would qualify as crimes of moral turpitude, his unexhausted argument regarding the legal status of his crimes is not meritorious enough to create the possibility that jurisdiction over it might have to be acquired in order to prevent "manifest injustice," *Marrero Pichardo*, 374 F.3d at 53. The fact that

Petitioner's convictions for unauthorized use of a motor vehicle may well not be convictions for crimes of moral turpitude, *see Matter of M.*, 1946 WL 6077, 1946 BIA LEXIS 41, 2 I. & N. Dec. 686 (BIA 1946), is irrelevant, since the other two convictions for crimes of moral turpitude would be enough to render Petitioner deportable under INA § 237(a)(2)(A)(ii). Thus, the *Marrero Pichardo* exception to the *Theodoropoulos* rule does not apply, and this Court has no subject matter jurisdiction to consider Petitioner's unexhausted claim.

## C. Personal Jurisdiction over a Proper Respondent

Whether the Attorney General is a proper respondent to a habeas petition filed by an alien to challenge a final order of deportation is a question that the Supreme Court and the Court of Appeals for the Second Circuit have specifically declined to answer. *Rumsfeld v. Padilla*, —— U.S. ——, —— n. 8, 124 S.Ct. 2711, 2718 n. 8, 159 L.Ed.2d 513 (2004); *Henderson v. INS*, 157 F.3d 106, 128 (2d Cir.1998). Courts in this District are divided on the question. *Compare, e.g., Perez v. Ashcroft*, 02 Civ. 10292(NRB), 2003 WL 22004901, at *2, 2003 U.S. Dist. LEXIS 14672, at *8 (S.D.N.Y. Aug. 25, 2003) (Attorney General is proper respondent); *Alcaide–Zelaya v. McElroy*, 99 Civ. 5102(DC), 99 Civ. 9999(DC), 2000 WL 1616981, *4, 2000 U.S. Dist. LEXIS 15714, at *12–13 (S.D.N.Y. Oct. 27, 2000) (same), *with, e.g., Belvett v. Ashcroft*, 00 Civ. 2463(LMM), 2002 WL 287839, *1, 2002 U.S. Dist. LEXIS 3168, at *2 (S.D.N.Y. Feb. 27, 2002) (Attorney General is not proper respondent); *Peon v. Thornburgh*, 765 F.Supp. 155 (S.D.N.Y. 1991) (same). The few cases in this District to address the issue since the Supreme Court's decision in *Padilla* have found the Attorney General to be a proper respondent. *Batista–Taveras v. Ashcroft*, 03 Civ.1968(LAK), 2004 WL 2149095, 2004 U.S. Dist. LEXIS 19136 (S.D.N.Y. Sept.

23, 2004); *Garcia–Rivas v. Ashcroft*, 04 Civ. 292(NRB), 2004 WL 1534156, 2004 U.S. Dist. LEXIS 12627 (S.D.N.Y. July 7, 2004); *see also Nolasco v. United States*, 02 Civ. 3451(SAS), 2004 WL 2480441, 2004 U.S. Dist. LEXIS 22315 (S.D.N.Y. Nov. 4, 2004) (finding waiver of any Government objection to naming either the Attorney General or the Secretary of the Department of Homeland Security as respondent). Respondents assert that the Attorney General is not a proper respondent, that the possible proper respondents to this petition are all located in Pennsylvania, and that this Court therefore may not adjudicate the petition because this Court lacks personal jurisdiction over any proper respondent to the petition.

Having already determined that it has no subject matter jurisdiction over this petition, the Court declines to opine on whether it also lacks personal jurisdiction over a proper respondent to the petition. "If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir.2000).

### D. Petitioner's Request for Restoration or Reduction of Bond

■ Petitioner has been in custody under a final order of deportation since August 5, 2004. (Pet. at 3 ¶ 1.) He requests that this Court release him on bail "pending his Appeal." (Pet. at 4 ¶ 4; Petitioner's Motion for Bail Pending Habeas Corpus Review at 1.) Whether or not the Court would have had the power to order petitioner released on bond pending adjudication of this petition *if* Petitioner had presented an apparently meritorious claim over which this Court had jurisdiction, it is clear that restoring Petitioner's bond would have been inappropriate in this case. The Second Circuit has instructed that "a court considering a habeas petitioner's fitness for bail must inquire into whether 'the habeas petition raises substantial claims and [whether] extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective.'" *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir.2001) (quoting *Iuteri v. Nardoza*, 662 F.2d 159, 161 (2d Cir.1981)). "The standard for bail pending habeas litigation is a difficult one to meet." *Mapp*, 241 F.3d at 226 (quoting *Grune v. Coughlin*, 913 F.2d 41, 44 (2d Cir.1990)). Petitioner's claims, for the reasons set out above, did not suffice to meet this standard.

Petitioner's request for bond pending the disposition of this petition is in any event now moot, since the Court dismisses his underlying petition for lack of subject matter jurisdiction.

### III. Conclusion

For the reasons stated above, the petition is DISMISSED for lack of jurisdiction. Petitioner's Motion for Bail Pending Habeas Corpus Review is DENIED as moot. The stay of deportation to which the government consented on October 19 is hereby lifted. The Clerk of the Court is directed to close this case.

SO ORDERED.