05-4622-ag
Valenzuela Grullon v. Mukasey

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2007

(Argued: August 30, 2007      Decided: November 27, 2007
                             Amended: January 7, 2008)

Docket No. 05-4622-ag

- - - - - - - - - - - - - - - - - - -x

JULIO CESAR VALENZUELA GRULLON,

                    Petitioner,

          - v.-

MICHAEL B. MUKASEY, ATTORNEY
GENERAL,[*] MICHAEL J. GARCIA,
EDWARD J. MCELROY, BUREAU OF
IMMIGRATION AND CUSTOMS
ENFORCEMENT,

                    Respondents.

- - - - - - - - - - - - - - - - - - -x

     Before:          JACOBS, Chief Judge, B.D. PARKER and
                      HALL, Circuit Judges.

     Petition for review of a final order of Immigration

Judge John Opaciuch denying cancellation of removal.

---

     [*] Pursuant to Federal Rule of Appellate Procedure
43(c)(2), Attorney General Michael B. Mukasey is
automatically substituted for former Attorney General John
Ashcroft as respondent in this case.

Petitioner failed to appeal the IJ's order to the BIA, petitioning instead for a writ of habeas corpus. Habeas corpus petition was docketed as a petition for review by operation of law under the REAL ID Act of 2005.

DISMISSED.

BOZENA ZIEDALSKI, New York, NY, for Petitioner.

M. JOCELYN LOPEZ WRIGHT, Assistant Director, Office of Immigration Litigation, Civil Division, United States Department of Justice (Peter D. Keisler, Assistant Attorney General and Carol Federighi, Senior Litigation Counsel, on the brief), Washington, D.C., for Respondents.

DENNIS JACOBS, Chief Judge:

Julio Cesar Valenzuela Grullon ("Valenzuela") petitions for review of an order of Immigration Judge ("IJ") John Opaciuch denying his application for cancellation of removal. Valenzuela, who failed to appeal the order of removal to the Board of Immigration Appeals ("BIA"), concedes that his administrative remedies are therefore unexhausted, but asks that the failure to exhaust be excused (and that we reach the merits of his petition). We hold that the exhaustion requirement applicable to Valenzuela's

2

petition, 8 U.S.C. § 1252(d)(1), is statutory and jurisdictional. Further, we conclude that the jurisdictional defect cannot be excused on a ground of manifest injustice. Contra Marrero Pichardo v. Ashcroft, 374 F.3d 46, 53 (2d Cir. 2004).

**I**

On December 5, 1994, Valenzuela was admitted as a lawful permanent resident from his native Dominican Republic. In December 2001, he was indicted in New York on a series of drug offenses, and pled to a single count in February 2002. He was sentenced to a term of three years to life in prison.

One month before his October 2002 release on parole, the INS charged Valenzuela with violating a law related to a controlled substance. See 8 U.S.C. § 1227(a)(2)(B)(i).[1] Upon his parole, Valenzuela was detained by the INS. In December 2002, he filed a petition for habeas corpus in the Southern District of New York, arguing that detention without bond prior to his removal proceedings was

---

[1] The government also alleged initially that Valenzuela had committed an aggravated felony, see 8 U.S.C. § 1227(a)(2)(A)(iii), but later withdrew that basis for removal.

3

unconstitutional. The district court (Griesa, J.) granted the petition on December 20, 2002, and Valenzuela was released. The government's appeal of that ruling became moot when Valenzuela's removal proceedings were completed; we therefore vacated the district court's order.[2]

Throughout his removal proceedings, conducted in the spring of 2003, Valenzuela conceded removability but sought cancellation of removal. In order to establish that he has continuously resided in the U.S. for seven years--a prerequisite to cancellation of removal, see 8 U.S.C. § 1229b(a)(2)--Valenzuela would have had to overcome the "stop-time" rule, which provides that "any period of continuous residence . . . shall be deemed to end . . . when the alien has committed an offense . . . that renders the alien inadmissible to the United States." 8 U.S.C. § 1229b(d)(1)(B). Valenzuela argued that the stop-time rule does not terminate a period of continuous residence until the alien is convicted of the removable offense--a consequential distinction for Valenzuela because he pled guilty a few months after the December 2001 expiration of

---

[2] Both parties note that the rationale for the district court's habeas ruling was in any event subsequently rejected by the Supreme Court in Demore v. Hyung Joon Kim, 538 U.S. 510 (2003).

4

the seven-year period, whereas the indictment alleged that the offense was committed on or about August 29, 2001.[3]

The BIA had already rejected Valenzuela's proposed reading at the time of his hearing before the IJ, see In re Perez, 22 I. & N. Dec. 689 (BIA 1999) (11-4 decision in banc), but Valenzuela urged the IJ to follow the reasoning of the Perez dissent.

The IJ denied relief in August 2003.[4]  Rather than appeal to the BIA, Valenzuela filed a second habeas petition in October 2003 to challenge the order of removal.  This habeas petition was pending in the Southern District of New York when the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 311 (2005), took effect on May 11, 2005. Pursuant to Section 106(c) of that Act, the district court ordered the habeas corpus petition transferred to this Court, where it was docketed as a petition for review.

---

[3] Valenzuela's brief professes uncertainty as to the precise date he committed the offense to which he pled guilty.  He concedes, however, that the date of his arrest-- November 29, 2001--fell within the seven-year period following his admission to the United States.

[4] We do not know the actual grounds for the order of removal because the oral decision is not included in the record on this appeal (a consequence of Valenzuela's failure to appeal to the BIA, discussed below); in all likelihood, however, one ground was Perez.

Valenzuela concedes his failure to exhaust administrative remedies before petitioning this Court for review, but he contends that any failure to exhaust should be excused because (1) appeal to the BIA would have been futile, (2) his appeal raises constitutional claims, and (3) dismissing his petition would cause a "manifest injustice." On the merits, Valenzuela argues that the stop-time rule is ambiguous as to whether continuous residence is terminated by commission of an offense or by conviction, and that the Perez dissent correctly concluded that the trigger is conviction.

The government urges us to dismiss the petition for review on exhaustion grounds because Valenzuela never appealed to the BIA. On the merits, the government defends the BIA's interpretation of the stop-time rule in Perez as consistent with the plain language of the statute and argues that Valenzuela is therefore barred from applying for cancellation of removal.

**II**

When the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 311 (2005), became effective, Valenzuela's second

habeas petition (challenging his order of removal), then pending in the Southern District of New York, was transferred to this Court and converted into a petition for review:

> If an alien's case, brought under section 2241 of title 28, United States Code, and challenging a final administrative order of removal . . . is pending in a district court on the date of the enactment of this division, then the district court shall transfer the case . . . to the court of appeals for the circuit in which a petition for review could have been properly filed . . . .

§ 106(c), 119 Stat. at 311; see also Marquez-Almanzar v. INS, 418 F.3d 210, 215 (2d Cir. 2005). The REAL ID Act speaks generally to the manner in which converted petitions are to be treated upon transfer here:

> The court of appeals shall treat the transferred case as if it had been filed pursuant to a petition for review under such section 242, except that subsection (b)(1) of such section shall not apply.

§ 106(c), 119 Stat. at 311. In other words, converted petitions are to be treated as ordinary petitions for review in all respects except as to the filing deadline (8 U.S.C. § 1252(b)(1)).

The question, then, is whether Valenzuela's converted petition is governed by 8 U.S.C. § 1252(d)(1) ("A court may

7

review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right"), or whether the sole exhaustion rule Valenzuela violated is a "judicial (common-law) [rule], [which is] discretionary and includes a number of exceptions[,]" Beharry v. Ashcroft, 329 F.3d 51, 56 (2d Cir. 2003).

We have not had occasion to decide whether § 1252(d) requires that aliens appeal to the BIA before petitioning this Court for review. But our jurisprudence makes that supposition. For example, we dismissed a habeas appeal in a case that had never been before the BIA, holding that the "limitations imposed by § 1252(d) on a court's ability to 'review' final orders of deportation extend[ed] to habeas corpus review." Theodoropoulos v. INS, 358 F.3d 162, 170 (2d Cir. 2004); see also Lin Zhong v. U.S. Dep't of Justice, 480 F.3d 104, 118 (2d Cir. 2006) ("[W]e have jurisdiction to review the 'final order of removal' entered against Lin, so long as a decision has been rendered on his application by an IJ and appealed to the BIA--the two administrative remedies available to him as of right."); cf. Marrero Pichardo v. Ashcroft, 374 F.3d 46, 53 (2d Cir. 2004) ("We

therefore hold that, notwithstanding a habeas petitioner's failure to exhaust his claims before the BIA, as required by section 1252(d), <u>we nonetheless have jurisdiction</u> to consider the petitioner's claim <u>if it is necessary to avoid manifest injustice</u>." (emphasis added)).

Squarely presented with the issue for the first time in this appeal, we hold that the exhaustion provision of § 1252(d)(1) requires aliens, <u>inter alia</u>, to appeal to the BIA before petitioning for review in this Court.

**III**

The next question is whether the statutory exhaustion requirement of § 1252(d)(1)--that a court may review a final order of removal only if the alien has exhausted all administrative remedies available to him as of right--is jurisdictional or merely "mandatory."[5]  <u>See</u> <u>Lin Zhong</u>, 480 F.3d at 119.  Mandatory requirements (we have said) are subject to waiver, <u>id.</u>, and are therefore less absolute than jurisdictional requirements.

---

[5] We need not deal here with the third category of exhaustion requirements--those that are judge-made, prudential rules of administrative law--because we hold that the exhaustion requirement that governs Valenzuela's petition is statutory.  <u>See</u> Part II, <u>supra</u>.

9

In *Lin Zhong*, 480 F.3d at 119-20, we distinguished between jurisdictional and mandatory rules, partly by resort to the Supreme Court's caveat that

> [c]larity would be facilitated . . . if courts and litigants used the label "jurisdictional" not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.

*Eberhart v. United States*, 546 U.S. 12, 16 (2005) (internal quotation marks and citation omitted). Subsequent to *Lin Zhong*, the Supreme Court sharpened the analysis. In *Bowles v. Russell*, 127 S. Ct. 2360 (2007), the Court held that a limit on extensions of time to appeal, *see* 28 U.S.C. § 2107(c), was jurisdictional largely because "of the fact that [the] time limitation is set forth in a statute." *Bowles*, 127 S. Ct. at 2364. The Court explained:

> Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them. Put another way, the notion of "subject-matter" jurisdiction obviously extends to "classes of cases . . . falling within a court's adjudicatory authority," but it is no less "jurisdictional" when Congress forbids federal courts from adjudicating an otherwise legitimate "class of cases" after a certain period has elapsed from

10

final judgment.

Id. at 2365-66 (citations omitted).  Bowles emphasized repeatedly that its reasoning was based on the statutory origin of the limitation, and thus made clear that limits expressed in statutes--as to time or "classes of cases"-- limit subject-matter jurisdiction.  See, e.g., id. at 2366 ("As we have long held, when an appeal has not been prosecuted in the manner directed, within the time limited by the acts of Congress, it must be dismissed for want of jurisdiction." (internal quotation marks omitted) (emphasis added)); id. at 2365 (observing that the Supreme Court's treatment of its certiorari jurisdiction "also demonstrates the jurisdictional distinction between court-promulgated rules and limits enacted by Congress").

Congress cast § 1252(d)(1) in terms of the courts' authority to review a "class of cases" (petitions for review of a final order of removal) and permitted review "only if the alien has exhausted all administrative remedies available as of right."  One of the administrative remedies available to aliens as of right is an appeal to the BIA.  In this way, Congress has instructed the courts that they may not review a final order of removal unless the alien has

appealed to the BIA. When an exhaustion requirement is statutory and evinces an intent to constrict the ability of courts to adjudicate a class of cases, the limitation is jurisdictional, rather than mandatory only. The requirement might be described as a "claim-processing rule"; but because it is a statutory limit on the Court's power, it is jurisdictional, not merely mandatory. Accord Magtanong v. Gonzales, 494 F.3d 1190, 1191 (9th Cir. 2007) (citing Bowles and holding that the 30-day time period for filing a petition for review is "mandatory and jurisdictional because it is imposed by statute" (internal citation omitted)).

We therefore hold that, as regards the requirement that petitioners appeal to the BIA, § 1252(d)(1) is jurisdictional. We have said as much in dicta. See Lin Zhong, 480 F.3d at 107 (referring to "the clearly jurisdictional requirement of 8 U.S.C. § 1252(d)(1) that cases of this sort be brought to the Executive Office for Immigration Review (i.e., an IJ and the BIA) before they can be considered by courts of appeal"); accord Lin Zhong v. U.S. Dep't of Justice, 489 F.3d 126, 130 (2d Cir. 2007) (Calabresi, J., concurring in the denial of in banc review) (observing that § 1252(d)(1) uses "language [that] typically

means that courts do not have jurisdiction to hear a petitioner who has not first brought his case before the available administrative agency").

Given that we are directed by statute to treat converted petitions, such as Valenzuela's, as ordinary petitions for review, it follows that such converted petitions are likewise subject to § 1252(d)'s jurisdictional bar.

**IV**

We are left to decide what exceptions, if any, would allow us to hurdle the jurisdictional bar that prevents us from reviewing the merits of Valenzuela's petition.

**A. Futility**

Valenzuela argues that appealing to the BIA would have been futile in light of the agency's precedential decision, In re Perez, 22 I. & N. Dec. 689 (BIA 1999). As the Supreme Court explained in Booth v. Churner, "we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." 532 U.S. 731, 741 n.6 (2001). At the same time,

13

Booth does allow that exhaustion may not be required "where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint," because "[w]ithout the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust."  This may technically be less an "exception" to a statutory exhaustion requirement than it is a statement regarding the parameters of that requirement.

Beharry v. Ashcroft, 329 F.3d 51, 58 (2d Cir. 2003) (internal citations omitted).  Booth applies in the immigration context.[6]

---

[6] Valenzuela cites dicta in Gill v. INS, 420 F.3d 82 (2d Cir. 2005), for the proposition that Booth's rule against futility exceptions does not operate in the immigration context because Booth was "based on the legislative history of the [Prison Litigation Reform Act], and in particular Congress's decision to eliminate previously-available statutory exceptions for futility." Gill, 420 F.3d at 87 n.9.  Of course, Gill's dicta runs counter to the reading of Booth set out in Beharry. Moreover, our own reading of Booth suggests that it is not limited to those circumstances in which the statutory history indicates that Congress took away a previously existing futility exception.  See Booth, 532 U.S. at 739 (referring to statutory history as one of two considerations leading to the Court's holding).  Such statutory history may counsel strict adherence to the congressional command, but we are bound to implement congressional limits on our jurisdiction without reference to particular features of statutory history.

14

Valenzuela's futility argument fails because he cannot demonstrate that the BIA was unable to provide the relief that he sought. The BIA could have reconsidered the Perez holding in banc, or it could have certified the question to the Attorney General. See 8 C.F.R. § 1003.1(g); see also Theodoropoulos v. INS, 358 F.3d 162, 173 (2d Cir. 2004) (observing that even though the Attorney General had issued a precedential opinion on the question, the BIA could have sent it back up to him). Valenzuela confuses the likelihood of adherence to precedent with the factual impossibility of relief: "it cannot be said that the IJ and the BIA do not 'have authority to act on the subject of the [petition], leaving [Valenzuela] with nothing to exhaust.'" Beharry, 329 F.3d at 59 (citing Booth, 532 U.S. at 736 n.4); accord Duvall v. Elwood, 336 F.3d 228, 234 (3d Cir. 2003) (even though the BIA had already "definitively decided" the question in a precedential decision, "§ 1252(d)(1)[] requires exhaustion as a matter of jurisdiction"). "That [Valenzuela]'s argument would likely have failed is not tantamount to stating that it would have been futile to raise it." Beharry, 329 F.3d at 62.

Taking a different tack, Valenzuela argues that

15

regulations requiring any BIA member assigned his case to "streamline" the appeal would have prevented that Board member from referring the appeal to a three-member panel or to an in banc panel of the BIA. But the regulation (set out in the margin[7]), specifically provided that a single board member could have affirmed without opinion only if he or she "determine[d] that the result reached in the decision under review was correct." 8 C.F.R. § 1003.1(e)(4)(i). Moreover, as Valenzuela concedes, the regulations specify that one circumstance in which appeals may be assigned to a panel is when there is a "need to reverse the decision of an immigration judge or the Service." 8 C.F.R. § 1003.1(e)(6)(vi).

Last, Valenzuela observes that § 1252(d)(1) requires

---

[7] "Affirmance without opinion. (i) The Board member to whom a case is assigned shall affirm the decision of the Service or the immigration judge, without opinion, if the Board member determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that
  (A) The issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel factual situation; or
  (B) The factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case."

8 CFR § 1003.1(e)(4).

16

only the exhaustion of "administrative remedies available <u>as of right</u>," whereas the exhaustion statute in <u>Booth</u> spoke only of "such administrative remedies <u>as are available</u>." The Ninth Circuit has parsed these phrases to mean that a remedy is available "as of right" within the meaning of § 1252(d)(1) only if the remedy is not "constrained by past adverse administrative decisions." <u>Sun v. Ashcroft</u>, 370 F.3d 932, 941-42 (9th Cir. 2004). We reject the Ninth Circuit's interpretation. The term "as of right" in § 1252(d)(1) excuses pursuit only of such remedies as are wholly discretionary. <u>See</u> <u>Arango-Aradondo v. INS</u>, 13 F.3d 610, 614 (2d Cir. 1994) ("[T]he failure to move to reopen does not preclude jurisdiction because . . . [it] is a discretionary remedy."). As the Supreme Court has explained, a statutory requirement for exhausting "remedies" necessarily entails exhausting "processes." <u>See</u> <u>Booth</u>, 532 U.S. at 739 ("[O]ne 'exhausts' processes, not forms of relief . . . .").

Valenzuela had a right to appeal the IJ's order of removal to the BIA. And he was statutorily required to exercise that right before appealing to this Court, notwithstanding his small chance of success. <u>See</u> <u>Lin Zhong</u>

17

v. U.S. Dep't of Justice, 480 F.3d 104, 118 (2d Cir. 2006) ("[I]n the context of [the alien's] . . . claims, we have jurisdiction . . . so long as a decision has been rendered on his application by an IJ and appealed to the BIA--the two administrative remedies available to him as of right." (emphasis added)).

**B. Constitutional Claim**

Valenzuela argues that his petition is not subject to statutory exhaustion requirements because it presents constitutional claims. The supposed constitutional argument is that the IJ violated Valenzuela's Due Process rights by misconstruing the stop-time rule to end his period of continuous residence when he committed the crime, as opposed to when he was convicted.

Even if the IJ's interpretation of the stop-time rule were incorrect, such an error would not be a constitutional violation. Accordingly, this is not a constitutional claim. Valenzuela is simply arguing that the IJ erroneously interpreted a statute in such a way that made him legally ineligible for discretionary cancellation of removal. We therefore do not reach the issue of whether there exists a

18

constitutional claim exception to § 1252(d).

### C. "Manifest Injustice"

Last, Valenzuela argues that we should excuse his failure to exhaust under the "manifest injustice" exception to the exhaustion requirement. See Marrero Pichardo v. Ashcroft, 374 F.3d 46 (2d Cir. 2004). Our circuit law has made this exception available "even when exhaustion is a jurisdictional matter." Lin Zhong, 480 F.3d at 107 n.1.

In Marrero Pichardo, it was deemed manifest injustice to remove a petitioner because: (1) he had resided in the U.S. for 26 years, (2) he had a wife and daughter in the U.S., (3) he claimed to have no ties to his native Dominican Republic, (4) he had appeared pro se before the IJ, and (5) the law had recently changed in the petitioner's favor (such that none of his eleven drunk driving convictions would be considered crimes of violence). 374 F.3d at 54. Valenzuela can cite comparable equities. He has resided in the U.S. for 13 years with his sister and mother, from whom he would be separated if deported; he was engaged to an American citizen who was carrying his child, at least as of 2003; he came here as a teenager and says he has "adopted" the United

19

States as his home country; and his behavior--after his parole--was "exemplary."  Although Valenzuela had counsel before the IJ, he claims that his counsel failed to inform him of the immigration consequences of pleading guilty.[8]

We noted that the intervening change in law in Marrero Pichardo's favor was not "collateral," but rather went to "the very basis of his deportation."  Id. at 54.  As to Valenzuela, there was no intervening change in law pertaining to his removability: Valenzuela challenges the correctness of the BIA's decision in Perez, which goes "to the very basis of his deportation," but Perez has not been overruled by the BIA or by this Court.  Valenzuela instead cites an intervening change in the law affecting the government's ability to detain him pending removal.[9]

---

[8] Valenzuela unsuccessfully petitioned a New York state court in 2003 to vacate his conviction on this ground.

[9] Specifically, before the IJ ordered Valenzuela removed in August 2003, the Supreme Court upheld as constitutional pre-removal detention of criminal aliens.  See Demore v. Hyung Joon Kim, 538 U.S. 510, 531 (2003).  Valenzuela notes that ICE then issued a memorandum stating that all persons within Demore's scope would be called in for interviews, and presumably for detention.  His argument is thus that an appeal to the BIA would have somehow increased the likelihood that he would be re-detained.  Even assuming (as we do not) that such an anxiety could excuse a failure to appeal, it is unclear why Valenzuela did not fear re-detention when he appeared before the IJ at his master calendar hearings in May and August of 2003--both of which

20

Valenzuela's argument based on a change of law thus does not neatly mirror the facts of Marrero Pichardo, although Valenzuela can claim the higher ground of having committed one offense instead of eleven. But, given that we have been willing to accept even an opinion from another circuit as a sufficient intervening change in law to assert "manifest injustice," see Gill v. INS, 420 F.3d 82, 88 (2d Cir. 2005), Valenzuela would have a plausible claim to dispensation for "manifest injustice" if we were to uphold that exception to § 1252(d)'s exhaustion requirement.

In light of the Supreme Court's recent opinion in Bowles v. Russell, 127 S. Ct. 2360 (2007), we hold that there is no "manifest injustice" exception to § 1252(d)'s exhaustion requirement.[10] Insofar as our earlier opinions have held to the contrary, those opinions are overruled.[11]

---

took place after the Supreme Court issued its Demore opinion in April of that year--or when he filed his second habeas petition.

[10] At the direction of the Court, the parties submitted additional briefing on whether Bowles, which was filed after the parties submitted briefs, had any impact on this case.

[11] In House v. Bell, 126 S. Ct. 2064, 2068 (2006), the Supreme Court recently reaffirmed that "[i]n certain exceptional cases involving a compelling claim of actual innocence," "the state procedural default rule is not a bar to a federal habeas corpus petition." The "actual innocence" exception is unaffected by Bowles because "actual

21

In Bowles, the Supreme Court considered the applicability of the "unique circumstances" exception to the jurisdictional deadline for filing a notice of appeal.  See Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 371 U.S. 215 (1962); Thompson v. INS, 375 U.S. 384 (1964).  The Bowles Court laid the exception to rest: "Because this Court has no authority to create equitable exceptions to jurisdictional requirements, use of the 'unique circumstances' doctrine is illegitimate."  127 S. Ct. at 2366.

Just as this analysis invalidates the "unique circumstances" exception to the jurisdictional bar created by the filing deadline at issue in Bowles, it likewise invalidates the "manifest injustice" exception to the jurisdictional bar created by 8 U.S.C. § 1252(d)'s exhaustion requirement.  Bowles broadly disclaims the "authority" of the federal courts "to create equitable exceptions to jurisdictional requirements."  Id.

**CONCLUSION**

---

innocence" is an exception to a judge-made rule, while Bowles overrules exceptions to any jurisdictional rule made by Congress, such as is at issue here.

We have considered the parties' remaining arguments and find each of them to be without merit.  For the foregoing reasons, Valenzuela's petition is dismissed for lack of jurisdiction.