# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2021
No. 20-4243

**PATRICK J. DONNELLY,**
*Petitioner-Appellant,*

v.

**CONTROLLED APPLICATION REVIEW AND RESOLUTION PROGRAM
UNIT, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,
THOMAS CIOPPA, DISTRICT DIRECTOR OF THE NEW YORK FIELD
OFFICE OF THE UNITED STATES CITIZENSHIP AND IMMIGRATION
SERVICES, UR M. JADDOU, DIRECTOR OF THE UNITED STATES
CITIZENSHIP AND IMMIGRATION SERVICES, ALEJANDRO MAYORKAS,
SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, MERRICK
B. GARLAND, UNITED STATES ATTORNEY GENERAL,**
*Respondents-Appellees.*[*]

---

On Appeal from the United States District Court
for the Southern District of New York

---

ARGUED: FEBRUARY 28, 2022
DECIDED: JUNE 14, 2022

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

Before:     WALKER, MENASHI, and LEE, *Circuit Judges*.

Petitioner-Appellant Patrick J. Donnelly brought this action seeking review of the denial of his application for naturalization in the U.S. District Court for the Southern District of New York under 8 U.S.C. § 1421(c). The district court dismissed the case for lack of subject-matter jurisdiction because Donnelly had failed to attend an agency hearing to review the denial and, according to the district court, § 1421(c)'s exhaustion requirement, which included the hearing, was jurisdictional. We disagree that § 1421(c) imposes a jurisdictional requirement. We hold that it is instead a mandatory claim-processing rule. However, we agree with the district court that Donnelly did not satisfy § 1421(c)'s exhaustion requirement. Because the government properly raised Donnelly's failure to exhaust, § 1421(c) precludes his claim. Donnelly therefore failed to state a claim, and we affirm the judgment of the district court on that ground.

---

EAMONN DORNAN, Dornan & Associates PLLC, Yonkers, NY (Gerard G. McCabe, FG McCabe & Associates, New York, NY, *on the brief*), *for Petitioner-Appellant*.

JESSICA F. ROSENBAUM, Assistant United States Attorney (Benjamin H. Torrance, Assistant United States Attorney, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY, *for Respondents-Appellees*.

---

2

20-4243
*Donnelly v. CARRP*

MENASHI, *Circuit Judge*:

In 2009, Petitioner-Appellant Patrick J. Donnelly filed an application for naturalization with United States Citizenship and Immigration Services ("USCIS"), one of the respondents-appellees in this case. Nine years later, after a convoluted series of proceedings, his application was denied when USCIS determined that he was ineligible for naturalization. Donnelly filed an administrative appeal, and in response the agency sent him a notice to appear at a hearing pursuant to 8 U.S.C. § 1447(a). After Donnelly failed to appear, the agency affirmed the denial of his application. Donnelly brought this action seeking review in the U.S. District Court for the Southern District of New York, alleging, among other things, that the agency failed to follow its own procedures in denying his application. The district court held that, by not attending the hearing, Donnelly failed to exhaust his administrative remedies as required by 8 U.S.C. § 1421(c). *Donnelly v. CARRP*, 503 F. Supp. 3d 100, 105 (S.D.N.Y. 2020). Because the district court held the exhaustion requirement to be jurisdictional, the district court dismissed the case for lack of subject-matter jurisdiction. *Id.* at 105-06.

We hold that the district court erred when it treated 8 U.S.C. § 1421(c) as a jurisdictional requirement. In keeping with the Supreme Court's attempts "to bring some discipline to the use of the term 'jurisdiction,'" *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) (internal quotation marks omitted), we conclude that § 1421(c) lacks the clear statement we require before labeling a limitation as "jurisdictional." At the same time, we hold that Donnelly's claim may not proceed. "[A] rule may be mandatory without being jurisdictional," *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1852 (2019),

and § 1421(c) is such a rule. Because the government properly raised Donnelly's failure to attend the hearing as a failure to exhaust, § 1421(c)'s exhaustion requirement must be enforced. Donnelly's noncompliance with the exhaustion requirement means that he failed to state a claim, and we affirm the judgment of the district court on that ground.

## BACKGROUND

### I

The Constitution provides that "Congress shall have Power … [t]o establish an uniform Rule of Naturalization." U.S. CONST. art. I, § 8. In the Immigration and Nationality Act, Congress set out the eligibility requirements for aliens seeking naturalization. Those requirements include, among other things, that the alien "has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter," 8 U.S.C. § 1429, that the alien "has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years," *id.* § 1427(a), and that the alien "during all the periods referred to in [8 U.S.C. § 1427(a)] has been and still is a person of good moral character," *id.*

Additionally, since 2002, Congress has provided that an alien must seek naturalization by filing an application with USCIS. Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. After filing an application, the applicant is subject to a background investigation, 8 U.S.C. § 1446(a), and is examined under oath or affirmation by a USCIS officer, 8 C.F.R. § 335.2. Following the examination, the officer either grants or denies the application. *Id.* § 316.14(b).

4

Section 1447 of Title 8 provides for the administrative appeal of an initial denial of a naturalization application. Following such a denial, an applicant "may request a hearing before an immigration officer." 8 U.S.C. § 1447(a). According to regulations, such a request must be filed with USCIS "within thirty days after the applicant receives the notice of denial," and "[u]pon receipt of a timely request for a hearing, USCIS will schedule a review hearing, within a reasonable period of time not to exceed 180 days from the date upon which the appeal is filed." 8 C.F.R. § 336.2(a), (b). At that hearing, "[t]he reviewing officer [has] the authority and discretion to review the application for naturalization, to examine the applicant, and either to affirm the findings and determination of the original examining officer or to re-determine the original decision in whole or in part." *Id.* § 336.2(b). The officer may "receive new evidence or take … additional testimony," and to do so the officer "may, in his or her discretion, conduct a full de novo hearing or may utilize a less formal review procedure." *Id.*

In the Immigration Act of 1990, Congress provided that "[t]he sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 (codified at 8 U.S.C. § 1421(a)).[1] Even so, there are two statutory avenues for an applicant to seek naturalization from a federal court. First, under 8 U.S.C. § 1447(b), if an initial decision is not rendered within 120 days of the examination

---

[1] Congress "transferred authority (1) to commence removal proceedings and (2) to adjudicate applications for naturalization from the Attorney General to the Secretary of the Department of Homeland Security" in the Homeland Security Act of 2002. *Ajlani v. Chertoff*, 545 F.3d 229, 231 n.2 (2d Cir. 2008).

of the applicant, he "may apply to the United States district court for the district in which the applicant resides for a hearing on the matter." The same subsection provides that "[s]uch court has jurisdiction over the matter and may either determine the matter or remand the matter … to [USCIS]." 8 U.S.C. § 1447(b).

Second, Congress has provided an avenue for seeking naturalization in federal court after an unsuccessful administrative appeal of an initial denial. Under 8 U.S.C. § 1421(c),

> [a] person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under [8 U.S.C. § 1447(a)], may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5.

When its conditions are met, § 1421(c) "offers an expansive form of judicial review." *Moya v. DHS*, 975 F.3d 120, 127 (2d Cir. 2020). According to its terms, "[s]uch review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c); *see also Chan v. Gantner*, 464 F.3d 289, 291 (2d Cir. 2006) (noting that § 1421(c)'s "grant of authority is unusual in its scope") (quoting *Nagahi v. INS*, 219 F.3d 1166, 1169 (10th Cir. 2000)).

## II

Patrick J. Donnelly, a citizen of Ireland, entered the United States as a visitor in 1987. Two years later, he married an American citizen. Together, they filed a Form I-130 (Petition for Alien Relative)

6

and a Form I-485 (Application for Permanent Residence), seeking legal permanent resident status for Donnelly.

One question on the Form I-485 asked: "Have you ever, in or outside the United States[,] been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance, including traffic regulations?" App'x 45. Donnelly answered yes and indicated that he had been arrested in New York in 1987 for assault in the third degree, for which the record was sealed and the charge dismissed. He provided no details about any other incident. Both the Form I-130 and Form I-485 were approved, and Donnelly obtained conditional permanent resident status on October 1, 1990. When the conditions were removed on October 7, 1992, he became a legal permanent resident.

In 2001, Donnelly sought naturalization for the first time. Similar to Form I-485, Form N-400 (Application for Naturalization) requires disclosure of any criminal charges or arrests. On this form, Donnelly added two incidents that occurred since his I-485 application: his arrests for DWI offenses in 1993 and 2001. He pleaded guilty to the 1993 offense, and he was found guilty of the 2001 offense. Donnelly's application for naturalization was denied in 2002 for failure to submit court-certified dispositions for those offenses.

Seven years later, Donnelly reapplied for naturalization. On his newest Form N-400, he again acknowledged his three arrests, and this time he provided court-certified dispositions. On June 17, 2014, he was interviewed by a USCIS officer. At the interview, Donnelly denied having ever been arrested in any other country. When the officer asked if there was "anything else that [he] would like to add," Donnelly replied that he "was questioned in Ireland for 3 days" by

"[t]he [p]olice." *Id.* at 104. The officer then asked Donnelly why the police kept him for three days. Donnelly responded that "[i]t was common." *Id.*

USCIS initially denied his application on January 29, 2015. USCIS explained that Donnelly failed to list CSH Supply Corporation in his employment history on either his 2001 or 2009 applications, even though a background check revealed that he was registered as the Chief Executive Officer of that company from 1999 to 2006. On the 2009 application, Donnelly answered that he had never given "false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion or removal." *Id.* at 75. Because the agency found that he lied on his 2001 form by failing to disclose that he had worked for CSH Supply Corporation, USCIS concluded that Donnelly had "given false testimony under oath with the intent to obtain an immigration benefit." *Id.* at 201.

Donnelly administratively appealed that decision. After the agency affirmed the decision on appeal, Donnelly filed a petition in federal district court pursuant to 8 U.S.C. § 1421. However, while that case was pending in the district court, the parties stipulated to a dismissal of the action without prejudice on November 16, 2017. As part of the stipulation, USCIS agreed to reopen *sua sponte* Donnelly's naturalization proceeding and to "not deny [Donnelly's] application for naturalization based solely on his failure to previously disclose his employment with CSH Supply Corporation." Stipulation and Order of Dismissal, *Donnelly v. Coven*, No. 1:17-CV-00321 (S.D.N.Y. Nov. 16, 2017), ECF No. 28.

So Donnelly went through the process again. On January 23, 2018, he was interviewed by USCIS for his reopened application. The agency again asked Donnelly about the incident when he was questioned in Ireland. USCIS asked Donnelly if he could "describe how this happened[.] Like were you stopped? Were you arrested? Were you restrained in any way?" App'x 247. This time, Donnelly did not claim that "[i]t was common." *Id.* at 104. Instead, he said, "I was arrested." *Id.* at 247.

That answer prompted USCIS to ask Donnelly to provide his criminal history in Ireland. Donnelly produced a "NO TRACE" police certificate from the National Police Chiefs' Council ("NPCC")—indicating that no convictions, cautions, final warnings, or reprimands were noted in his records with the NPCC. However, USCIS claimed to "subsequently receive[] information from the Police Service of Northern Ireland which indicates previous arrests that [Donnelly] did not disclose." *Id.* at 47. According to USCIS, that documentation revealed "four convictions for driving and road traffic offenses." *Id.* And it indicated that, when Donnelly was arrested for three days, his arrest was "pursuant to Section 12 of the Prevention of Terrorism (Temporary Provisions) Act 1976." *Id.* These details were not disclosed on either Donnelly's 2009 application for naturalization or his Form I-485 application for permanent residence.

USCIS denied Donnelly's application for naturalization. Under 8 U.S.C. § 1429, "no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter." According to the agency, Donnelly lied on his I-485 form, and he was therefore ineligible for naturalization under § 1429. Additionally, the agency

9

concluded that Donnelly was ineligible for naturalization because he was "unable to meet the good moral character requirement for naturalization." App'x 48; *see* 8 U.S.C. § 1427(a) ("No person … shall be naturalized unless such applicant … during all the periods referred to in this subsection has been and still is a person of good moral character.").

On June 23, 2018, Donnelly administratively appealed the decision by filing a Form N-336 request for a hearing. He argued that the denial of his application was erroneous because (1) the agency did not provide him with the documentation from the Police Service of Northern Ireland, (2) the fact that he had been a lawful permanent resident made him eligible for naturalization, (3) USCIS did not have the authority to determine that he illegally obtained permanent resident status, (4) he was never charged with a terrorism offense, (5) he did not provide false testimony to obtain an immigration benefit, and (6) USCIS's processing of his application was improper.

When, after eleven months, the agency failed to schedule a review hearing, *see* 8 C.F.R. § 336.2(b), Donnelly filed a petition seeking review of the denial of his application in federal district court on May 28, 2019. About three months later, USCIS scheduled a hearing for September 17. In its notice to Donnelly, the agency directed that "[i]f for any reason you cannot keep this appointment, return this letter immediately to the [USCIS] office address listed above with your explanation and request for a new appointment time." App'x 255. According to the notice, failure to appear "without prior notification and without good cause may result in the denial of your application." *Id.* In response, Donnelly sent a letter to USCIS asserting that the district court "now has either exclusive or

concurrent jurisdiction over this matter, and … it would be entirely unlawful and/or inappropriate to proceed with this hearing pending the resolution of [the] federal court petition." *Id.* at 256. He therefore requested "that this hearing be adjourned generally until the matter is resolved" by the district court. *Id.*

USCIS did not adjourn the hearing.[2] Yet Donnelly did not appear at the scheduled time. USCIS therefore "review[ed] [his] Form N-336 and Form N-400 based on the information on the record" and "reaffirm[ed] the decision to deny [his] Form N-400" on October 31. *Id.* at 240-41. The agency noted that Donnelly did not appear for a "hearing to review the denial of the N-400, where … you were given the opportunity to provide additional documents or briefs to overcome the derogatory information" from the Police Service of Northern Ireland. *Id.* at 241 (internal quotation marks omitted). The agency made the same observation about Donnelly's claim that the agency engaged in unreasonable delay; he was "offered the opportunity to provide additional documents or briefs … at the time of [his] Form N-336 hearing" but he "failed to do so." *Id.* at 247.[3]

That decision prompted Donnelly to amend his federal court petition on December 18 to note that USCIS reaffirmed the denial of his naturalization application.[4] He asked the district court to "render

---

[2] The record does not indicate that USCIS responded to Donnelly's letter.

[3] Because USCIS found that Donnelly "procured [his] … adjustment … by fraud or by willfully misrepresenting a material fact," DHS subsequently placed Donnelly in removal proceedings. App'x 258-60.

[4] The government argues on appeal that we may consider only the initial petition because the amended petition includes events that occurred after the case was filed. This court "ha[s] never squarely addressed whether events occurring after the filing of a complaint may cure a jurisdictional

a judgment that [he] is entitled to be naturalized" and to "conduct a naturalization hearing in this matter de novo pursuant to 8 [U.S.C.] § 1421(c)." *Id.* at 224. The government moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that § 1421(c)'s exhaustion requirement is jurisdictional and that Donnelly's failure to attend the hearing meant that he failed to fulfill that requirement. The government also argued that the ongoing removal proceedings meant that the action must be dismissed for failure to state a claim. *See Ajlani*, 545 F.3d at 241 ("[A]n alien cannot secure naturalization from either the district court or the Attorney General while removal proceedings are pending.").

The district court granted the government's motion. *Donnelly*, 503 F. Supp. 3d at 105. Reading this court's decision in *Escaler v. USCIS*, 582 F.3d 288 (2d Cir. 2009), the district court concluded that "the Second Circuit treat[s] § 1421(c)'s exhaustion requirement as jurisdictional and not as a claims-processing rule." *Donnelly*, 503 F. Supp. 3d at 104. According to the district court, reviewing Donnelly's claim when he "declined to attend his scheduled hearing" would "necessitate disregarding § 1421(c)'s demand for how petitioners participate in the administrative process." *Id.* at 105. The

---

defect that existed at the time of initial filing." *Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 354 (2d Cir. 2020). Because we hold that § 1421(c) is a nonjurisdictional rule, we need not resolve that issue. Under Federal Rule of Civil Procedure 15(d), "the court may … permit a party to serve a supplemental pleading setting out any … event that happened after the date of the pleading to be supplemented," and "[t]he court may permit supplementation even though the original pleading is defective in stating a claim." We therefore consider Donnelly's amended petition in deciding this case.

12

district court therefore dismissed the case for lack of subject-matter jurisdiction. *Id.* Donnelly timely appealed.

## DISCUSSION

Donnelly raises two arguments on appeal. First, he contends that the district court erred in holding that he did not satisfy § 1421(c)'s exhaustion requirement. Second, Donnelly argues in the alternative that the exhaustion requirement of § 1421(c) is a claim-processing rule, not a jurisdictional one, and is therefore subject to equitable exceptions. We address each argument in turn.

## I

Donnelly first argues that the district court erred in holding that he failed to comply with § 1421(c). As noted above, § 1421(c) provides that "[a] person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under [8 U.S.C. § 1447(a)], may seek review of such denial before the United States district court for the district in which such person resides." This case presents the question whether, despite Donnelly's failure to attend his hearing, the denial of his application was affirmed "after a hearing before an immigration officer." 8 U.S.C. § 1421(c).

According to Donnelly, it was. In his view, "the plain language of the statute simply requires that there be a 'denial' of the [a]pplication on appeal." Appellant's Br. 14-15. In other words, Donnelly had a hearing, just not a physical one at which he appeared. And because "there is no statutory requirement that the 'denial' can only be made on the basis of a physical hearing," *id.* at 15, Donnelly claims that he complied with § 1421(c)'s command to obtain "a hearing" before seeking judicial review.

13

We disagree. To be sure, "[t]he term 'hearing' in its legal context … has a host of meanings." *United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 239 (1973). Given how we have repeatedly described the hearing requirement of § 1421(c), the legal context here is administrative exhaustion. *See, e.g.*, *Moya*, 975 F.3d at 127 (holding that the plaintiffs "may not sue until they have satisfied" "[s]ection 1421(c)'s exhaustion requirement"); *Escaler*, 582 F.3d at 292 ("Section 1421(c) … requires the exhaustion of administrative remedies prior to seeking [judicial review].").

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law" and serves "two main purposes." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). "First, exhaustion protects administrative agency authority" by "giv[ing] an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and by "discourag[ing] disregard of the agency's procedures." *Id.* at 89 (internal quotation marks and alteration omitted). "Second, exhaustion promotes efficiency" by resolving claims out of court and by producing "a useful record for subsequent judicial consideration." *Id.* Thus, before Donnelly could seek review in the district court, he had to "exhaust available administrative review procedures." *Escaler*, 582 F.3d at 292.

In these circumstances, Donnelly failed to exhaust the administrative remedies available to him. The agency provided Donnelly with an opportunity to attend a hearing before an immigration officer, and the agency sought his physical presence at that proceeding. As the agency noted, Donnelly's claims may have succeeded on administrative appeal because his appearance at the

14

hearing would have given him "the opportunity to provide additional documents or briefs." App'x 241 (internal quotation marks omitted). By failing to appear at the hearing, therefore, Donnelly deprived the agency of "an opportunity to correct its own mistakes" and "disregard[ed] … the agency's procedures." *Woodford*, 548 U.S. at 89 (alteration omitted); *see also McKart v. United States*, 395 U.S. 185, 193-94 (1969) ("[S]ince agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise.").

Donnelly's failure to attend the hearing also undermined the purpose of § 1421(c) to promote efficiency. This court has previously observed that Congress "permitted applicants to petition the district court only after the application has already been reviewed by the INS" in order "to minimize the strain on judicial resources." *Moya*, 975 F.3d at 134 (internal quotation marks omitted). Had Donnelly attended his hearing, he might have obtained relief without coming to the district court. The system Donnelly proposes—in which an applicant may file an administrative appeal without fully prosecuting it and still seek relief from the district court—would waste both judicial and agency resources.

If Donnelly had attended his hearing, additional procedures would have been available for him to develop and the agency to resolve his claim. Under existing regulations, at the hearing the immigration officer "may receive new evidence or take such additional testimony as may be deemed relevant to the applicant's eligibility for naturalization or which the applicant seeks to provide." 8 C.F.R. § 336.2(b). The officer would have had "the authority and

15

discretion" to "examine the applicant" and to "conduct a full de novo hearing." *Id.* Given these possibilities, merely filing an administrative appeal cannot qualify as a "hearing before an immigration officer." 8 U.S.C. § 1421(c).

Accordingly, we are unconvinced that Donnelly's act of "fil[ing] a fully briefed notice of appeal" satisfies § 1421(c)'s exhaustion requirement. Appellant's Br. 20. We therefore affirm the district court's holding that Donnelly failed to satisfy § 1421(c)'s exhaustion requirement when he did not appear at the hearing.

## II

Donnelly's second argument is that the district court could have granted his naturalization application even if he had failed to exhaust his administrative remedies. According to Donnelly, the district court erred in holding that § 1421(c) sets out a jurisdictional requirement. Rather, Donnelly asserts, § 1421(c) is a mandatory claim-processing rule and we may review his application under a "manifest injustice" exception to that rule. Appellant's Br. 21, 24.

We agree with Donnelly that § 1421(c) is a nonjurisdictional rule and that the district court erred when it granted the government's motion to dismiss under Rule 12(b)(1). But this holding does not save Donnelly's claim. Mandatory claim-processing rules are mandatory; because he did not comply with § 1421(c) and the government has not waived its requirements, Donnelly cannot state a claim. We therefore affirm the district court's judgment.

## A

The question whether a procedural rule is "jurisdictional" is "not merely semantic but one of considerable practical importance for

16

judges and litigants." *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). Jurisdictional rules "govern a court's adjudicatory authority"; nonjurisdictional rules—such as claim-processing rules—do not. *Matuszak v. Comm'r of Internal Revenue*, 862 F.3d 192, 195-96 (2d Cir. 2017) (internal quotation marks omitted). Because of that distinction, "[o]bjections based on nonjurisdictional claim-processing rules may be waived or forfeited, while a jurisdictional issue can be raised at any time throughout the proceedings." *In re Indu Craft, Inc.*, 749 F.3d 107, 112 n.7 (2d Cir. 2014).

In *Arbaugh v. Y & H Corp.*, the Supreme Court provided a "readily administrable bright line" rule for determining whether a statutory limitation is a jurisdictional rule or a nonjurisdictional rule. 546 U.S. 500, 516 (2006). "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional," then the limitation is jurisdictional. *Id.* at 515-16. In the absence of such a clear statement, "courts should treat the restriction as nonjurisdictional in character." *Auburn Reg'l Med. Ctr.*, 568 U.S. at 153 (quoting *Arbaugh*, 546 U.S. at 516). While Congress need not incant particular "magic words" to enact a jurisdictional requirement, "traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences." *United States v. Wong*, 575 U.S. 402, 409-10 (2015); *see also Auburn Reg'l Med. Ctr.*, 568 U.S. at 153-54 ("We consider context, including this Court's interpretations of similar provisions in many years past, as probative of whether Congress intended a particular provision to rank as jurisdictional.") (internal quotation marks omitted).

We conclude that § 1421(c) is a mandatory claim-processing rule, not a jurisdictional one. The language of § 1421(c) "neither

17

speaks in jurisdictional terms nor refers in any way to the jurisdiction of the courts." *United States v. Saladino*, 7 F.4th 120, 123 (2d Cir. 2021) (per curiam) (internal quotation marks and alterations omitted) (quoting *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)). The omission of any reference to "jurisdiction" stands out when compared to § 1447, which provides that, if the agency fails to make a timely initial determination on a naturalization application, "the applicant may apply to the United States district court" and "[s]uch court has *jurisdiction* over the matter." 8 U.S.C. § 1447(b) (emphasis added). If Congress wanted to speak in jurisdictional terms in § 1421, § 1447 demonstrates that it knew how to do so.

Neither does § 1421(c) speak in jurisdictional terms merely because it refers to "[j]udicial review" and "review." The Administrative Procedure Act ("APA") also provides that certain agency actions "are subject to judicial review," 5 U.S.C. § 704, but the Supreme Court has made clear that "[t]he judicial review provisions of the APA are not jurisdictional." *Air Courier Conf. v. Am. Postal Workers Union*, 498 U.S. 517, 523 n.3 (1991). Because a prohibition on "judicial review" can be read as providing the requirements for a cause of action, it cannot provide the clear statement we require to establish a limitation as jurisdictional. *See id.* ("Whether a cause of action exists is not a question of jurisdiction, and may be assumed without being decided.").

The government argues that our decision in *Escaler* has already made clear that § 1421(c) is a jurisdictional rule. In *Escaler*, this court held that the applicant Jaime Escaler could not seek review in federal district court because he chose not to pursue an administrative appeal of the denial of his naturalization application. 582 F.3d at 290, 293. We

18

stated that "[t]he principal issue before us … is whether appellant needed to exhaust his administrative remedies." *Id.* at 291. We held that Escaler had to do so because "[w]hen, as here, the exhaustion requirement is established by statute … the requirement is mandatory, and courts are not free to dispense with it." *Id.* at 292 (internal quotation marks and alteration omitted). And we concluded our analysis by stating that Escaler's "conceded failure to take advantage of [the administrative appeals process] to litigate his claims negates our jurisdiction over the present action." *Id.* at 293. According to the government, that last phrase—"negates our jurisdiction"—means that this court has already decided that § 1421(c) is a jurisdictional rule.

We disagree. "[T]he legal lexicon knows no word more chameleon-like than 'jurisdiction.'" *United States v. Sabella*, 272 F.2d 206, 209 (2d Cir. 1959) (Friendly, J.). As noted above, for a statutory requirement to be a jurisdictional rule, Congress must clearly state that it is so. *Arbaugh*, 546 U.S. at 515-16. Nowhere in *Escaler* did this court engage in that analysis. Our holding in *Escaler* depended solely on the observation that the "exhaustion requirement is established by statute," 582 F.3d at 292—a fact that may be true of either a jurisdictional rule or a nonjurisdictional claim-processing rule. We generally require jurisdictional rulings to be expressed clearly to be binding; "*sub silentio* assumptions of jurisdiction have no precedential value on the jurisdictional question," *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 128 n.2 (2d Cir. 2016), and "drive-by jurisdictional rulings" similarly "have no precedential effect," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998).

The only time *Escaler* uses the word "jurisdiction" in its analysis is when it says that the applicant's failure to exhaust "negates our jurisdiction." *Escaler*, 582 F.3d at 293. That ambiguous phrase is not clearly a jurisdictional holding. *See Green v. Dep't of Educ.*, 16 F.4th 1070, 1076 (2d Cir. 2021) (per curiam) ("[I]t is important to recall that it has been 'commonplace' in judicial opinions for the word 'jurisdiction' to refer to limitations that are not truly jurisdictional, such as the elements of a cause of action.") (quoting *Butcher v. Wendt*, 975 F.3d 236, 249 (2d Cir. 2020) (Menashi, J., concurring in part and concurring in the judgment)). We do not think the phrase requires us to ignore the Supreme Court's command to "see if there is any clear indication that Congress wanted the rule to be jurisdictional." *Henderson*, 562 U.S. at 435-36 (internal quotation marks omitted).

"Because the consequences that attach to the jurisdictional label may be so drastic," courts "have tried in recent cases to bring some discipline to the use of this term." *Id.* at 435. Section 1421(c) lacks the clear language we require before finding that a procedural limitation "speak[s] to a court's authority" rather than "to a party's procedural obligations." *EPA v. EME Homer Cty. Generation, L.P.*, 572 U.S. 489, 512 (2014). We therefore hold that § 1421(c) prescribes a nonjurisdictional claim-processing rule.

## B

That the district court erred in dismissing the case for lack of jurisdiction does not mean that Donnelly's case may proceed. "[C]alling a rule nonjurisdictional does not mean that it is not mandatory." *Gonzalez v. Thaler*, 565 U.S. 134, 146 (2012). We have previously noted that "[s]tatutory exhaustion requirements are mandatory, and courts are not free to dispense with them." *Bastek v.*

20

*Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998). Section 1421(c)'s exhaustion requirement is statutory, and therefore it is mandatory.

Mandatory claim-processing rules "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson*, 562 U.S. at 435. Thus, how § 1421(c) applies is "in essence a question whether Congress intended to allow a certain cause of action" against the agency. *Air Courier Conf.*, 498 U.S. at 523 n.3. Unlike jurisdictional requirements, mandatory claim-processing requirements may be waived or forfeited—such as when "the party asserting the rule waits too long to raise the point." *Manrique v. United States*, 137 S. Ct. 1266, 1272 (2017) (quoting *Eberhart v. United States*, 546 U.S. 12, 15 (2005) (per curiam)). And because mandatory claim-processing rules are not jurisdictional, we may assume that such rules are satisfied to resolve the case on other grounds. *See Steel Co.*, 523 U.S. at 94 (noting that "assuming jurisdiction for the purpose of deciding the merits … carries the courts beyond the bounds of authorized judicial action") (internal quotation marks omitted).

Though not jurisdictional, mandatory claim-processing rules remain mandatory. The Supreme Court has repeatedly said that "[i]f a party properly raises" a mandatory claim-processing rule, the rule is "unalterable." *Manrique*, 137 S. Ct. at 1272 (internal quotation marks and alteration omitted); *see also Fort Bend County*, 139 S. Ct. at 1849 ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it.") (internal quotation marks and alteration omitted); *Hamer v. Neighborhood Hous. Servs.*, 138 S. Ct. 13, 17 (2017) ("If properly invoked, mandatory claim-processing

21

rules must be enforced."); *Eberhart*, 546 U.S. at 19 ("These claim-processing rules thus assure relief to a party properly raising them.").

Donnelly's argument that we may read an equitable "manifest injustice" exception into § 1421(c)'s exhaustion requirement is therefore unavailing. "[W]e are not free to rewrite the statutory text" if "Congress's intent, in enacting [a] statute, was to require plaintiffs to exhaust all administrative remedies before bringing suit in federal court." *Bastek*, 145 F.3d at 94-95. In *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001), the Supreme Court rejected the prisoner petitioner's argument that courts should read a futility exception into the exhaustion requirement of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). In that case, the Court refused to create an extra-statutory exception for the simple reason that "Congress has mandated exhaustion," and "we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth*, 532 U.S. at 741 n.6. Like § 1997e(a), § 1421(c) is a statutory exhaustion requirement, and we may not create exceptions to it.

Despite this authority to the contrary, Donnelly argues that our decision in *Lin Zhong v. DOJ*, 480 F.3d 104 (2d Cir. 2007), permits us to fashion equitable exceptions to § 1421(c). According to Donnelly, *Lin Zhong* asserted that there could be a "manifest injustice" exception even when the exhaustion requirement is required by statute and jurisdictional. 480 F.3d at 107 n.1. Because § 1421(c) is not even jurisdictional, Donnelly contends, there should be a similar exception by which a court may review the denial of Donnelly's application.

We disagree that *Lin Zhong* allows us to ignore the statutory limits on Donnelly's cause of action under § 1421(c). The language on

which Donnelly relies is not only dicta but inapplicable to these circumstances. In *Lin Zhong*, this court held that the exhaustion requirement at issue was judge-made and that the government had waived it. *Id.* at 123, 125. Moreover, *Lin Zhong* based the "manifest injustice" exception on cases that had assumed all statutory limits were jurisdictional. *Id.* at 107 n.1; *see also Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 52-53 (2d Cir. 2004) (reading *McCarthy v. Madigan*, 503 U.S. 140 (1992), to mean that "judicially imposed exhaustion requirements are prudential and statutory ones are jurisdictional"). Since then, in *Grullon v. Mukasey*, we "overruled" those opinions that recognized such a "manifest injustice" exception. 509 F.3d 107, 115 (2d Cir. 2007). We did so in light of *Bowles v. Russell*, which invalidated a judge-made "unique circumstances" exception to the statutory 30-day time period to appeal because only Congress may "authorize courts to promulgate rules that excuse compliance with the statutory time limits." 551 U.S. 205, 213-15 (2007). That reasoning applies with equal force in this case. Whether § 1421(c) is jurisdictional or not, the "manifest injustice" exception that Donnelly seeks would be a "court-created exception[] without authorization." *Bowles*, 551 U.S. at 215.

Judge-made exceptions may be available for judge-made exhaustion requirements. But we cannot rewrite a statute. Because Donnelly failed to attend the hearing he was provided, he failed to comply with § 1421(c). And because the government properly raised Donnelly's failure in district court, that rule must be enforced.

\*　　　　\*　　　　\*

Though we agree that Donnelly failed to satisfy the exhaustion requirement of § 1421(c) and this case must be dismissed, we disagree with the district court's decision to dismiss for lack of subject-matter

23

jurisdiction. The difference between a dismissal for lack of jurisdiction and a dismissal for failure to state a claim often carries significance. A dismissal for lack of jurisdiction "must be without prejudice rather than with prejudice." *FASORP v. NYU*, 11 F.4th 68, 78 (2d Cir. 2021). Dismissals for failure to state a claim, on the other hand, are generally with prejudice. *See* Fed. R. Civ. P. 41(b); *see also Ry. Labor Execs.' Ass'n v. Staten Island R.R. Corp.*, 792 F.2d 7, 12-13 (2d Cir. 1986) (modifying the district court's dismissal for lack of jurisdiction into a dismissal under Rule 12(b)(6) with prejudice).

In the context of administrative exhaustion, however, dismissal without prejudice is frequently appropriate because a "failure to exhaust administrative remedies is often a temporary, curable procedural flaw." *See Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (alteration omitted) (quoting *Snider v. Melindez*, 199 F.3d 108, 111 (2d Cir. 1999)). While it is unlikely, it is conceivable that the agency could reopen Donnelly's naturalization proceedings and afford him another opportunity to exhaust his administrative remedies. Accordingly, we **AFFIRM** the judgment of the district court dismissing the case without prejudice.